IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MAUREEN NOLAN,<br>        Plaintiff,<br>vs.<br>PORTER MCGUIRE KIAKONA, LLP;<br>ASSOCIATION OF APARTMENT<br>OWNERS OF THE PACIFIC<br>ISLANDER,<br>        Defendants. | Civil No. 23-CV-00271-DKW-WRP<br><br>DECLARATION OF RICHARD L. HOLCOMB |

**DECLARATION OF RICHARD L. HOLCOMB**

1.    My name is Richard L. Holcomb. I am an attorney duly licensed to practice law in the State of Hawai'i. This declaration is made to the best of my knowledge and based on personal knowledge of the matters set forth herein unless stated otherwise.

2.    I am an attorney of record for the Plaintiff, Maureen Nolan, in the above-captioned case. I have received no compensation for representing Ms. Nolan in this federal lawsuit and will only be compensated through settlement or an award of fees.

3.    As set forth below, I was responsible for and/or assisted in the discovery

of this matter, including the Requests for Admissions and Motion to Compel, *sub judice*.

## BIOGRAPHICAL INFORMATION

4. I attended David Lipscomb University, a small liberal arts college, from 1992 through 1996. I received an academic scholarship and earned a B.S. in Business Administration. I graduated with a 3.24 G.P.A. and maintained nearly a 4.0 G.P.A. in my junior and senior years.

5. From 2001 to 2004, I attended the University of Tennessee College of Law, where I won three Academic Achievement Awards and appeared on the Dean's List Honor Roll regularly. I graduated with a 3.44 G.P.A., earning my J.D.

6. I was a law clerk for Attorney Richard L. Gaines at Eldridge and Gaines in Knoxville, TN from August 2001 to May 2005. There, I researched a number of legal issues, including constitutional issues. In addition to drafting motions and legal memoranda, I also substantially drafted a number of appellate briefs that, after finalization, were submitted in the Tennessee Court of Criminal Appeals and the Sixth Circuit Court of Appeals.

7. I was admitted to the Tennessee bar in 2005 and, as far as I know, remain a member in good standing in Tennessee (albeit on inactive status), the United States District Courts for the Eastern and Middle Districts of Tennessee and the Sixth Circuit Court of Appeals.

8. From May 2005 until June of 2008, I was employed as an associate attorney by the Law Offices of James A. H. Bell, P.C. in Knoxville, TN. There I litigated a number of constitutional issues and represented defendants in all aspects of various state and federal criminal, quasi-criminal and administrative proceedings many of which were "high profile."[1] I researched, drafted, and argued motions, memoranda and briefs (appellate and otherwise) on behalf of a variety of clients. I elicited testimony from witnesses at depositions, evidentiary hearings and sentencing. I also argued before the federal courts in a number of cases and before Tennessee appellate courts. My most rewarding experience was when I initiated and served as lead counsel in a civil case that ultimately led to Tennessee's Drug Tax Act being declared unconstitutional.

9. From June 2008 to June 2009, I managed my own practice and was again affiliated with Eldridge and Gaines. I essentially performed the same functions as I did at Mr. Bell's firm. However, I was solely responsible for the cases as well as the administrative duties necessitated by my practice.

10. In May of 2009, I moved with my family to Honolulu. In June, I started working as an associate at Dubin Law Offices in Honolulu. There, I primarily drafted memoranda and appellate briefs addressing a wide variety of civil litigation issues.

11. I took the Hawaii bar exam in July of 2009 and was admitted to the Hawaii Bar in November 2009.

12. In March of 2010, I started my own firm, which is now Holcomb Law, LLLC. Since that time, I represented people accused with OVUII, and people (primarily plaintiffs) in a wide range of civil and civil rights litigation, including challenging constitutional violations, employment law cases, and dozens of consumer law cases including those involving FDCPA, TCPA and UDAP violations.

13. I estimate that I have served as lead counsel in more than fifty appeals in the Hawai'i State courts. I have prevailed in the vast majority of those appeals, at least five of which were before the Hawai'i Supreme Court.

14. I am admitted to the Ninth Circuit Court of Appeals. I have served as lead counsel in approximately five appeals before the Ninth Circuit and have argued at least three cases before panels of the Ninth Circuit.

15. My appellate litigation efforts have resulted in a number of published opinions, including the case styled *Roberts v. City and County of Honolulu*, 938 F.3d 1020 (9th Cir. 2020) which successfully challenged the hourly rates awarded by this Court.

16. I have been nationally and regionally published:

Richard L. Holcomb and David B. Smith, *Challenging Pretrial Lis Pendens on Substitute Property*, THE CHAMPION, April 2008, at 36.

Richard L. Holcomb, *Preventing Post-Hudson Pitfalls*, THE CHAMPION, May 2007, at 28.

Richard L. Holcomb and James A.H. Bell, *The Controlled Substance Tax: Analysis, Argument & Attack*, THE CHAMPION, March 2006, at 28.

Richard L. Holcomb, *"Ethical" Tolling?*, FOR THE DEFENSE, April-May 2006, at 5.

Richard L. Holcomb, *Sex Crimes are A-Changing*, FOR THE DEFENSE, October-November 2006, at 6.

17. I have been invited to lecture at a number of Continuing Legal Education seminars, including: lectures in 2006 addressing Tennessee's Drug Tax, in Memphis, Nashville, and Knoxville, where attendees received two hours CLE credits; a lecture in 2007 addressing "dog sniffs" and conditional pleas in Memphis and Nashville, where attendees received 1.5 hours CLE credit; and a lecture in Honolulu, HI addressing "Police Liability," and more specifically, *Monell* and qualified immunity in 2013 where attendees received VCLE credits.

18. I have been active in a variety of Professional Associations, serving on the Board of Directors and as Chairperson for the Drug Tax Committee for the Tennessee Association of Criminal Defense Lawyers. I served as Hawaii's state delegate for the National College of DUI Defense. I was an active member of the National Association of Criminal Defense Lawyers. I have been an active member of the American Association for Justice and the F Warriors alumni group for the renowned Gerry Spence Trial Lawyers' College from which I graduated in 2013. I have been an active member of the National Association of Consumer Advocates. I have been an active member of the Federal Bar Association. I am also an obligatory

member of the Hawaii State Bar Association.

19. I have consistently sought to improve my skills as a lawyer, devoting hundreds of hours and thousands of dollars each year to continuing education, even though I do not receive "credit" for most of that ongoing education. I have traveled the country in pursuit of becoming a better lawyer. For example, in September 2013, I graduated from Gerry Spence's Trial Lawyers College, a renowned month-long program in Dubois, WY. Two weeks later, I attended Pete Barry's intensive three-day FDCPA Bootcamp in San Francisco, CA. I was also invited to and completed an invitation only three-day intensive cross- examination seminar with the esteemed Terry MacCarthy (author of the ABA publication "MacCarthy on Cross-Examination) in Tulsa, OK. I have also attended several of the Federal Bar Association's Honolulu CLE events. I have attended the American Association for Justice's Deposition College in Denver, CO among numerous other legal education programs.

## BASIS FOR REQUESTED RATE

20. For purposes of calculating attorneys' fees in this action, I have therefore determined a reasonable hourly rate for my services in this district, as further described below.

21. Looking to all available sources, including the attached Declarations of Joseph Rosenbaum, Frederick Arensmeyer, Alan Beck, and Bruce Sherman (copies

from the *Hart* matter, *infra*), as well as prior awards, the prevailing market rate for an attorney with my knowledge, skill, reputation, and experience is $350 per hour.

22. In 2020, I was awarded $350 per hour by the Court of Appeals for the Ninth Circuit for work performed in Honolulu. Based on Declarations nearly identical to those submitted here, that Court found "[Plaintiff] has submitted evidence demonstrating that Holcomb's requested rate is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." I have attached a true and correct copy of the opinion styled *Pelayo, et. al. v. Platinum Limousine, Inc., et. al.*, 2020 U.S.App. LEXIS 42707 (9th Cir. Nov. 4, 2020).

23. On November 6, 2023, and based on the same evidence presented herein, I was also awarded $350 per hour in the Circuit Court for the First Circuit for the State of Hawaii in the matter styled *Hart v. Lithia*, 1CCV-20-0001189.

24. The *Pelayo* and *Hart* matters are the most recent fee applications I have filed. The remaining cases where I have represented Plaintiffs with claims based on fee-shifting statutes, have settled or were not resolved during my representation of the Plaintiff.

25. As shown by those awards and the instant application, I have not raised my rate in more than four years. Moreover, the majority of my practice currently consists of people who hire me based on an hourly fee schedule and pay the fees as

litigation proceeds. My hourly rate for "paying clients" is at least $350 per hour. I have collected $350 per hour from dozens of "paying clients" over the years.

26. I believe this to be a reasonable rate for my services in a case such as this. I have dedicated my career to pursuing cases for actual human beings who were being exploited and abused by government or corporate entities and/or prosecuted, often unjustly, by state and federal governments. People that I have represented in cases similar to the instant case cannot find legal representation because few lawyers will take a righteous case if it means numerous hours of under- or un-compensated effort.

27. As a solo practitioner with no staff and few resources, this case has placed a significant strain on my practice and family life.

28. When I have hired a Honolulu attorney for a civil matter (approximately six years ago), I paid that attorney $400 per hour.

29. The *Pacific Business News* Article entitled "City Will Spend Over $1 Million in Rail-Related Attorneys' Fees" reported that, <u>in 2011</u>, the City and County of Honolulu paid its own independent lawyers from Honolulu law firms (Kobayashi, Sugita & Goda, and Carlsmith Ball) between $295 and $495 per hour. In other words, the bottom-rung associate at those firms were billed at $295 per hour *thirteen years ago*, despite their obvious inexperience. Those attorneys were not any more experienced in rail cases or any other cases than Plaintiffs' counsel. The requested

rates were within or even less than those rates paid by the city to its own outside counsel.

30. At the time this article was released, I reviewed the websites for both law firms named in the article. Kobayashi, Sugita and Goda's website revealed that they had eighteen partners and ten associates. The partners ranged in experience from 49 years (Mr. Kobayashi) to 7 years (Jonathan Moore, who was licensed in Louisiana in 2007). The associates ranged in experience from 0 to 7 years' experience. The structure of Carlsmith Ball's website made it difficult to analyze the varying degrees of their associates' and partners' experience. However, at the time there appeared to be 77 attorneys employed at Carlsmith Ball with widely diverse levels of experience.

31. Consumer rights attorneys who must rely on fee-shifting statutes to represent clients who cannot afford attorneys' fees deserve a rate consistent with what the City and County of Honolulu pays its outside attorneys. Not only have I been awarded $350/hour since 2020, I have requested only $55 per hour more than the <u>lowest</u> rate that the city paid its least experienced outside attorneys <u>thirteen years ago</u>. First, insofar as this Court could find that rail litigation is somehow "more complex" than the instant matter, the complexity is subsumed in the lodestar calculation as those attorneys would necessarily bill more hours. Second, the United States Supreme Court has specifically stated that civil rights cases should

9

be treated the same as and rates not reduced from other complex cases such as "anti-trust litigation," *Blum v. Stenson*, 465 U.S. 886, 893 (1984). The same holds true for consumer rights cases. And the Ninth Circuit has specifically rejected the isolation of a certain type of case in a certain area for determining fee rates under fee-shifting statutes. *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053-54 (9th Cir. 2009) (rejecting Fourth Circuit's definition of "relevant community" which looked solely to other LHWCA cases in the same region in favor of a more broad definition). Third, the Hawaii Supreme Court has not found "rail" cases to be any more complex than other cases. *Kaleikini v. Yoshioka, et. al.*, No. SCAP-11-0000611 (Haw. May 2, 2013).

## HOURS EXPENDED

32. I have reviewed and approved the time and charges set forth in the itemization of work performed in this case, below, and affirm to the best of my knowledge that the time spent, and expenses incurred were reasonable and necessary under the circumstances. These hours specifically include *only* hours related to the Request for Admissions, *sub judice*, and the tasks and circumstances leading to and the resulting Motion to Compel.

33. The following are the time entries related specifically to this discovery dispute:

| **DATE** | **DESCRIPTION** | **TIME** |
|---|---|---|
|  |  |  |

| | | |
|---|---|---|
| 3/5/24 | Draft RFA (1) | 1 |
| 3/6/24 | Con't Draft RFA (2); Msg./Email BFS re RFA language (.1) | 2.1 |
| 3/7/24 | Finalize RFA's (1) | 1 |
| | Draft/File COS (.3P); Email Counsel (.1P) | .4P |
| 4/18/24 | Review Answers to RFA (.5); Email counsel (.1); Discuss Answers with BFS (.2) | .8 |
| 4/23/24 | Discuss Insufficiencies of RFA w/ Dave Hofteizer (Dean Depo) | .2 |
| 5/1/24 | Review/Comment RFA Responses (.5); Review Warta and Guerrero in regard to RFA objections (.3); Draft Letter to Defense Counsel requesting Stips in lieu of costly discovery (1.5); Discuss RFA/stip strategy with BFS (.1) | 2.4 |
| 5/2/24 | Final Edits to Letter req. Stips (.5); Email defense counsel (.1) | .6 |
| 5/20/24 | Meet and confer with Dave H and Stephen W and BFS (.2); Discuss M&C/strategy with BFS (.2) | .4 |
| 5/22/24 | Exchange emails w/ defense re o/s items (.2); review/provide Brief and Kiakona Depo (.2) | .4 |
| 5/30/24 | Exchange emails w/ Hofteizer re disc and M&C | .5 |
| 5/31/24 | Review Hofteizer Email (.1); Review Disc. Requests (.2) | .3 |
| 7/15/24 | Draft bulletpoints for TR Kiakona depo tomorrow (including FDCPA Debt Collector/Consumer/Comm'n; s) (1.7) and add exhibits (.4) | 2.1 |
| 7/16/24 | Kiakona Depo 3.1(NC); Meet and confer w/ Wall re Admissions and instructions not to testify (.3); Discuss w/TR and BFS strategy re o/s discovery and sanctions (1.5) | 1.8 |
| 7/17/24 | Discuss Prep M&C w/ BFS (.1); M&C with Hofteizer and WallDiscuss admissions and instruction not to testify (1.0) | 1.1 |

| 7/25/24 | Draft Declaration (2.9)/Review/compile Exhibits for Motion to Compel (.3) | 3.2 |
| --- | --- | --- |
| 7/26/24 | Exch emails w/ TR office re Motion to Compel Filing | .1 |
| 8/26/24 | Discuss Mtn Compel filing/ strategy w/ BFS (.5) | .5 |
| 9/12/24 | Review Mtn. Compel Order (.3); Discuss Order/strategy with BFS (.2) | .5 |
| 9/23/24 | Review MTC Decl. and Timesheet for 10/1 Submission of Time per Porter Orders (.5); Review/Comment Timesheet for RFA- related Hours (1.1) | 1.6 |
| 9/24/24 | Review Revised Admissions (.3); Discuss rev. answers and next steps with BFS (.2) | .5 |
| 9/26/24 | Review/Comment Revised Admissions (.5) | .5 |
| 9/28/24 | Draft Declaration for Hours (10/1 submission per Porter Order) | 3.2 |

34. I maintained detailed notes of my hours throughout this litigation. My hours were recorded contemporaneously or, at least, very close in proximity to the time when the tasks were completed. I believe the entries to be accurate and as detailed as possible. I believe the hours to be both reasonable and necessary to resolve this discovery dispute that should have simply resulted in good faith answers to the Requests for Admission *in May*.

35. Up to and including the instant declaration and having exercised billing judgment, I have reasonably expended 24.8 attorney hours pertaining to this discovery dispute. I have spent an additional .4 hours completing paralegal

tasks which I have billed at $100/hour.

36. As such, the total value of reasonable attorneys' fees attributable to this discovery dispute is $8,680 in fees plus $40 for the paralegal tasks. Thus, I am seeking $8720 in fees for this discovery dispute.

37. Hawaii's GET tax will leave me with a 4.712% liability. The following, using the amounts specified above, illustrates both the GET amount and the total award:

| Awarded Amount | + | GET Tax | = | Total Award |
|---|---|---|---|---|
| $8720 | + | 410.89 | = | $9130.89 |

38. The undersigned recognizes that this Court indicated that it may not award the full amount of fees because this Court only awarded relief as to 29 of the 30 Requests for Admission. However, I specifically addressed the fact that the one single Admission (*i.e.*, requesting an admission that Porter Kiakona Kopper, LLP is the same entity as Porter McGuire Kiakona, LLP are the same entity) was the sole request to which PMK responded in good faith. Nevertheless, a reduction by 1/30th of my requested fees would result in a reduction of $304.36.

I, Richard L. Holcomb, declare under penalty of perjury under the laws of the state of Hawai'i that the forgoing is true and correct to the best of my knowledge.

DATED: Honolulu, Hawai'i, September 28, 2024.

*s/Richard L. Holcomb*
Richard L. Holcomb (9177)