TERRANCE M. REVERE  (HI Bar No. 5857)
Revere and Associates
Pali Palms Plaza
970 North Kalaheo Street, Suite A301
Kailua, Hawaii 96734
Telephone No: (808) 791-9550
terry@revereandassociates.com

BRUCE F. SHERMAN (HI Bar No. 5996)
1050 Bishop St., Suite 509
Honolulu, HI  96813
Telephone No: (808) 221-0901
bfs@bfshermanlaw.com

RICHARD L. HOLCOMB  (HI Bar No. 9177)
Holcomb Law, LLLC
733 Bishop St. Suite 1478
Honolulu, Hawaii 96813
Telephone No: (808) 545-4040
rholcomblaw@gmail.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MAUREEN NOLAN, | Case No. 1:23-CV-00271 DKW-WRP |
| Plaintiff, | |
| v. | PLAINTIFF MAUREEN NOLAN'S MEMORANDUM IN OPPOSITION TO DEFENDANT PORTER MCGUIRE KIAKONA, LLP'S MOTION FOR SUMMARY JUDGMENT, *DKT*. 47; CERTIFICATE OF SERVICE |
| PORTER MCGUIRE KIAKONA, LLP, | |
| Defendant. | |
| | Hearing Date:  November 1, 2024 |
| | Hearing Time:  9:00 a.m. |

)    Trial Date: January 27, 2025
)    Judge: Hon. Derrick K. Watson

**PLAINTIFF MAUREEN NOLAN'S MEMORANDUM
IN OPPOSTION TO DEFENDANT PORTER MCGUIRE KIAKONA, LLP'S
<u>MOTION FOR SUMMARY JUDGMENT, *DKT.* 47</u>**

## TABLE OF CONTENTS

I.    RELEVANT UNDISPUTED FACTS . . . . . . . . . . . . . .    1

II.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . .    3

III.  THE ABUSE OF PROCESS CLAIM SURVIVES  . . . . .    4

   A. There is sufficient evidence of PMK's ulterior purpose. . . .    4

   B. There were numerous acts or threats aimed at an
      objective not legitimate in the use of process.  . . . . . . . . . . . .  8

IV.   THE IIED CLAIM ALSO SURVIVES. . . . . . . . . . . . . . . 10

   A. The Litigation Privilege does not apply.  . . . . . . . . . . . . . . . . 10

   B. There is ample evidence of outrageousness
      and severe emotional distress.  . . . . . . . . . . . . . . . . . . . . . . . . 11

V.    MS. NOLAN IS ENTITLED TO SUMMARY
      JUDGMENT AS TO THE FDCPA ISSUES. . . . . . . . . . . . . 16

   A.  Ms. Nolan's was a "consumer debt." . . . . . . . . . . . . . . . .    17

   B. PMK's Misleading and False Counterclaim was
      a communication under the FDCPA. . . . . . . . . . . . . . . . . . .  23

CONCLUSION   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25

## TABLE OF AUTHORITIES

*Reported Cases*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . .  3, 5

*Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067 (9th Cir. 1992) . . . . . . . . . . .  19

*Doe Parents No. 1 v. State of Hawaiʻi, Dept. of Educ.,*
100 Hawaiʻi 34, 58 P.3d 545 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . .    16

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010) . . . . .    24

*Enoka v. AIG Hawaii Ins. Co.*, 109 Haw. 537,
128 P.3d 850 (2006), *as corrected* (Feb. 28, 2006) . . . . . . . . . . . . . .    11-12, 13

*Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007) . . . . 23-24

*Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*,
698 F.3d 290 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

*Heintz v. Jenkins*, 514 U.S. 291 (1995) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hughes v. Cardinal Federal S&L Ass'n*,
566 F.Supp. 834 (S.D. Ohio 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . .    20-21

*In re Kelly*, 841 F.2d 908 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . 19

*Isobe v. Sakatani*, 127 Hawaiʻi 368, 279 P.3d 33 (App. 2012) . . . . . .    10-11

*Kauilani Ewa, LLC v. Chang*, 120 Haw. 398,
207 P.3d 148 (Ct. App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

*Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984 (9th Cir. 2017) . . 23

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3, 22

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
637 F.3d 939 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

*McKenna v. Volkswagenwerk Aktiengesellschaft*, 57 Haw. 460,
558 P.2d 1018 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15-16

*McNair v. Maxwell & Morgan PC*, 893 F.3d 680 (9th Cir. 2018) . . . . 23

*Mitchell v. Branch*, 45 Haw. 128, 363 P.2d 969 (1961) . . . . . . . . . . . . 15

*Myers v. Cohen*, 67 Haw. 389, 688 P.2d 1145 (1984) . . . . . . . . . . . .  5

*Nat'l Indus., Inc. v. Republic Nat'l Life Ins. Co.*,
677 F.2d 1258 (9th Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 22

*Newman v. Boehm, Pearlstein & Bright, Ltd.*,
119 F.3d 477 (7th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Obduskey v. MacCarthy & Holthus*, 586 U.S. 466 (2019) . . . . . . . . . .  25

*Pulawa v. GTE Hawaiian Tel*, 112 Haw. 3,143 P.3d 1205 (2006) . . .  16

*Reyes v. Kenosian & Miele, LLP*,
619 F. Supp. 2d 796 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . .  25

*Shames-Yeakel v. Citizens Financial Bank*,
677 F.Supp.2d 994 (D. Conn. 2009) . . . . . . . . . . . . . . . . . . . . . . . .  20

*Shoppe v. Gucci America, Inc.*,
94 Hawaii 368, 14 P.3d 1049 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*State v. Thompson*, 150 Haw. 466, 504 P.3d 1054 (Ct. App. 2022) . . .  16

*Taylor-Rice v. State*, 91 Haw. 60, 979 P.2d 1086 (1999) . . . . . . . . . .  16

*Tower v. Moss*, 625 F.2d 1161 (5th Cir. 1980) . . . . . . . . . . . . . . . . . .  21

*Young v. Allstate Ins. Co.*, 119 Haw. 403, 198 P.3d 666 (2008) . . . .  4, 5, 8, 11

**Unreported Cases**

*Avery v. Gordon*, No. 08-139-HU,
2008 WL 4793686 (D. Or. Oct. 27, 2008) . . . . . . . . . . . . . . . . . . . . .  25

*Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes,*
No. CIV. 13-00669 HG-BMK,
2014 WL 2761744 (D. Haw. June 18, 2014) . . . . . . . . . . . . . . . . . . . . . . .  13, 14

*Beeks v. ALS Lien Servs.*, No. CV 12-2411 FMO PJWX,
2014 WL 7785745 (C.D. Cal. Feb. 18, 2014) . . . . . . . . . . . . . . . . . . .  19-20

*Cathie P. Allen, et. al. v. BRT Utility Corp.*, *et. al.*, 3:95CV00221 (WWE)
1996 WL 776583 (D. Conn. October 24, 1996) . . . . . . . . . . . . . . . . . . 20

*Camaj v. Makower Abbate Guerra Weggner Vollmer PLLC*,
No. 19-CV-10179, 2019 WL 6037597 (E.D. Mich. Nov. 14, 2019) . . . 18

*Galima v. Ass'n of Apartment Owners of Palm Ct.*,
No. CV 16-00023 LEK-RT,
2019 WL 1982514 (D. Haw. May 3, 2019) . . . . . . . . . . . . . . . . . . . . .  16

*Glawe v. Carpenter, Hazlewood, Delgado & Bolen PLC*,
859 F. App'x 102 (9th Cir. 2021)  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Mlnarik v. Smith, Gardner, Slusky, Lazer, Pohren & Rogers, LLP*,
No. 14-CV-01849-BLF,
2014 WL 6657747 (N.D. Cal. Nov. 21, 2014) . . . . . . . . . . . . . . . . . .  19

*Nochez v. L. Off. of Tary C. Loomis-Therrien*,
No. EDCV1500937VAPKKX,
2015 WL 13916248 (C.D. Cal. Aug. 3, 2015) . . . . . . . . . . . . . . . . . .  19

*Porras v. Vial Fotheringham LLP*, No. 3:13-CV-00699-BR,
2015 WL 2449486 (D. Or. May 21, 2015) . . . . . . . . . . . . . . . . . . . . .  19

**Statutes, Rules, and Other Authorities**
Fed. R. Civ. P., Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

**PLAINTIFF MAUREEN NOLAN'S MEMORANDUM
IN OPPOSTION TO DEFENDANT PORTER MCGUIRE KIAKONA, LLP'S
MOTION FOR SUMMARY JUDGMENT, *DKT.* 47**

## I.    RELEVANT UNDISPUTED FACTS

Unit 110 at the Mokuleia Sands condominium project was purchased in 2000 by Ms. Nolan's mother to be used as a residence for Ms. Nolan's brother, Dennis. Nolan Decl. ¶ 3; CSF 1-2.  In October 2006, Ms. Nolan purchased the Unit from her mother. *Id*. ¶ 5; CSF 3.   The Unit was intended to continue to be used as a residence for Dennis and Ms. Nolan's mother would also reside there during the winter months. *Id*.; CSF 4. Other family members would stay at the Unit when visiting Oahu. *Id*.   In 2008, Ms. Nolan asked Dennis to leave temporarily while she reorganized her debt and strengthened her financial condition.  *Id*. ¶ 8; CSF 5.  The Unit was never rented out until May 23, 2008.  See *Id*. ¶¶ 5-8; CSF 6.

Owners at Mokuleia Sands are required to pay monthly assessments and other costs to the Association of Apartment Owners of Mokuleia Sands (the "AOAO") per the governing documents of the Mokuleia Sands condominium project.  *Dkt.* 1 ¶ 11; *Dkt.* 14 ¶ 11; CSF 7.   The assessments on the Unit were not kept current and so began a decades long saga of collection attempts of incalculable amounts from Ms. Nolan with no one bothering to conduct even a cursory investigation as to the amount due. Exhs. 12-13; CSF 23. Those attempts include the following relevant to this case:

- In a letter dated August 7, 2020, Kapono Kiakona, managing partner of PMK, demanded $9,217.27 from Ms. Nolan. That amount does not appear anywhere on the ledger. Exhs. 2, 10; CSF 26;

- On September 18, 2020, Mr. Kiakona responded to a letter written by Ms. Nolan's then attorney, Bryan Krislock who had sought verification of the amount demanded in the August 7, 2020 letter. Kiakona only provided the same confusing ledger(s), with the same confusing and unlawful entries, Exhs. 4, 10; CSF 26.

- On January 13, 2021, Mr. Kiakona demanded $10,256.27 directly from Ms. Nolan. Not only does that number appear nowhere on the ledger, but also Ms. Nolan was represented by Mr. Krislock at the time, Exhs. 4, 10; CSF 26;

- On January 26, 2021, Mr. Kiakona wrote Mr. Krislock regarding "his client Maureen Nolan" and informing Mr. Krislock of remedies that may be available to Ms. Nolan pursuant to Hawai'i law. Again, the same ledger with the same amounts was attached. Exhs. 5, 10; CSF 26;

- On December 18, 2020, PMK recorded a lien against the Unit. The lien states that as of December 8, 2020, Ms. Nolan owed the AOAO $10,015.21. That amount appears nowhere on the ledger. In fact, no balance shown on the ledger exceeded $10,000 until May of 2021. Exhs. 10, 11; CSF 27.

Finally, due to these continued collection attempts of indecipherable amounts and PMK's unwillingness to explain the origin of the balance (even to Mr. Krislock), on December 29, 2021, Ms. Nolan filed her complaint in the matter styled *Maureen Nolan v. Association of Apartment Owners of Mokuleia Sands, et. al.*, 1CCV-21-001605. Nolan Decl. ¶ 23; CSF 29.  There, Ms. Nolan raised five claims against the AOAO and its property management company, Hawaiiana, for the various indecipherable charges on the ledger and the December 2020 lien.  *Id*.

Even in the face of the Complaint, PMK doubled down.  On August 19, 2022, PMK filed a Counterclaim seeking foreclosure and/or a money judgment against Ms. Nolan. Exh. 1, CSF 30. There, PMK alleged that "[a]s of August 16, 2022, Defendant Nolan has failed and neglected to pay $25,424.78, the said sum representing outstanding maintenance fees, special assessments, attorneys' fees and costs, and other assessments …". Exh. 1, p. 6 ¶ 22l CSF 31.  PMK calculated the amount demanded.  Exh. 16 No. 21, p. 21, CSF 35.  This case follows.

## II.      STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge …  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "[T]he trier of fact is not permitted to resort to speculation and surmise." *Nat'l Indus., Inc. v. Republic Nat'l Life Ins. Co.,* 677 F.2d 1258, 1267 (9th Cir.1982).  An opponent [and necessarily the movant in meeting the initial burden] "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

## III.    THE ABUSE OF PROCESS CLAIM SURVIVES

The parties agree that the elements of the tort of abuse of process under Hawaii law are: "(1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding." *Kauilani Ewa, LLC v. Chang*, 120 Haw. 398, 207 P.3d 148 (Ct. App. 2009); *see Dkt.* 47-1, p. 12-13.  The parties disagree as to the existence of genuine issues of material fact as to each of these elements.  Both elements are discussed separately below.

### A.    *There is sufficient evidence of PMK's ulterior purpose.*

The Hawaii Supreme Court has decided several issues that are instructive as to the resolution of whether Ms. Nolan presents sufficient evidence to overcome Summary Judgment in regards to the "ulterior purpose" element.

First, the Hawaii Supreme Court rejected "the false premise that, if process is used for at least one valid purpose, such as settlement, then any invalid purpose is 'incidental' and the valid purpose is 'primary.'" *Young v. Allstate Ins. Co.*, 119 Haw. 403, 413, 198 P.3d 666, 676 (2008). Thus, PMK does not prevail on its Motion simply by asserting valid purposes supporting its actions in the state case.  Instead, "a defendant's use of process for a proper purpose does not necessarily mean that he used the process primarily for that purpose." *Id*. at 414, 677.

Second, a confession of an ulterior purpose *is not required*.  In reversing summary judgment entered against a Plaintiff and in favor of PMK's current defense

firm as to the related "malice" element of the tort of malicious prosecution, the Hawaii Supreme Court specifically found that "malice is seldom the subject of a confession by the wrongdoer. It usually must be proved by inferences from other evidence." *Myers v. Cohen*, 67 Haw. 389, 396, 688 P.2d 1145, 1151 (1984).

Finally, the conduct at issue is not limited to the contents of the Counterclaim. Instead, the tort applies to "the entire range of procedures incident to litigation." *Young,* 119 Hawai'i at 412, 198 P.3d at 675 (internal quotation marks and brackets omitted).

In *Young*, the Hawaii Supreme Court also specifically held that "scorched earth litigation tactics" used to punish adversaries and/or "send a message" are "patently illegitimate." *Id*. at 414, 677. Such is precisely what happened in the state court litigation and when analyzing the entire range of procedures incident to that litigation, there is more than sufficient evidence to support the inference that the *primary* (if not the only) purpose of PMK's actions was improper. And here, this inference must be drawn in favor of Ms. Nolan. *Anderson*, 477 U.S. at 255.

From the beginning, PMK failed to investigate any amount that Ms. Nolan actually owed and instead relied solely on the Association's property management company, Hawaiiana. Exhs. 12, p. 9 (17-22), p. 11 (13-16); 13 p. 25 (12-25); CSF 23. Hawaiiana, in turn, relied solely on the Association's prior property management companies' reported balance forwards. *Id*. As a result, no one had any idea how

much Ms. Nolan actually owed.  Had PMK conducted even a cursory investigation

before filing the Counterclaim seeking foreclosure, PMK would have discovered

that the balance was incorrect and indecipherable.

Yet, in the face numerous inquiries by attorneys representing Ms. Nolan for

the precise purpose of determining the outstanding balance, Nolan Decl. ¶ 23; CSF

29, since at least 2020, PMK demanded incalculable late fees and tacked on to its

demands unexplained "attorneys' fees" that do not even appear on the ledger:

- In a letter dated August 7, 2020, Kapono Kiakona, managing partner of PMK, demanded $9,217.27 from Ms. Nolan. That amount does not appear anywhere on the ledger. Exhs. 2, 10; CSF 26;

- On September 18, 2020, Mr. Kiakona responded to a letter written by Ms. Nolan's then attorney, Bryan Krislock who had sought verification of the amount demanded in the August 7, 2020 letter. Kiakona only provided the same confusing ledger(s), with the same confusing and unlawful entries, Exhs. 4, 10; CSF 26.

- On January 13, 2021, Mr. Kiakona demanded $10,256.27 directly from Ms. Nolan. Not only does that number appear nowhere on the ledger, but also Ms. Nolan was represented by Mr. Krislock at the time, Exhs. 4, 10; CSF 26;

- On January 26, 2021, Mr. Kiakona wrote Mr. Krislock regarding "his client Maureen Nolan" and informing Mr. Krislock of remedies that may be available to Ms. Nolan pursuant to Hawai'i law. Again, the same ledger with the same amounts was attached. Exhs. 5, 10; CSF 26;

- On December 18, 2020, PMK recorded a lien against the Unit. The lien states that as of December 8, 2020, Ms. Nolan owed the AOAO $10,015.21. That amount appears nowhere on the ledger. In fact, no balance shown on the ledger exceeded $10,000 until May of 2021.  Exhs. 10, 11; CSF 27.

Finally, due to these continued collection attempts of indecipherable amounts and PMK's unwillingness to explain the origin of the balance (even to Mr. Krislock), on December 29, 2021, Ms. Nolan filed her complaint in the matter styled *Maureen Nolan v. Association of Apartment Owners of Mokuleia Sands, et. al.*, 1CCV-21-001605. Nolan Decl. ¶ 23, CSF 29.  There, Ms. Nolan raised claims against the AOAO and its property manager for the indecipherable charges and the lien. *Id.*

PMK doubled down. On August 19, 2022, PMK filed a Counterclaim seeking foreclosure and/or a money judgment against Ms. Nolan. Exh. 1; CSF 30. There, PMK alleged that "[a]s of August 16, 2022, [Ms.] Nolan" owed:

| | |
|---|---|
| Maintenance Fees | $5,042.70 |
| Maintenance Fee Reserves | $5,207.27 |
| Special Assessments | $1,537.63 |
| Late Charges | $2,781.40 |
| Lien Processing Charge | $50.00 |
| Attorneys' Fees and Costs | $10,805.78 |
| **TOTAL** | **$25,424.78** |

Exh. 1, p. 6 ¶ 22; CSF 30-31.  <u>PMK calculated the amounts demanded</u>.[1] Exh. 16, no. 21, p. 21; CSF 35.

As with the prior demands, that amount appears nowhere on the ledger, Exhs. 1, 10; CSF 31-33, and is approximately two and a half times more than what PMK

---

[1] Ms. Nolan would have included PMK's response to Ms. Nolan's Request for Production of Documents in support of *her* Motion for Partial Summary Judgment had PMK answered the Requests in good faith. *See Dkt.* 52 (finding that PMK failed to answer *twenty nine* of the thirty Requests for Admission).

claimed was owed previously. *Compare* Exh. 4 (demanding $10,256.27); CSF 26. Indeed, the amount due as stated on the ledger did not exceed $25,000 until November 2022, three months after the filing of the Counterclaim. Exhs. 1, 10; CSF 32. Moreover, the only additional legal fees that appear on the ledger from August of 2022 until April of 2023 is a single entry for $693.75 in March of 2023. Exhs. 1, 10; CSF 33. Thus, the balance demanded in the Counterclaim cannot be dependent upon attorneys' fees incurred in drafting the Counterclaim.

Despite the complete lack of investigation or justification for the amounts demanded, PMK attempted to punish Ms. Nolan and/or set an example to other owners via the precise "scorched earth" litigation condemned by the Hawaii Supreme Court in *Young*. If not proven directly by these facts, this is *at least* the inference that this Court must draw in favor of Ms. Nolan. There is ample evidence to allow the inference that PMK filed this Counterclaim with the requisite ulterior motive. The motion should be denied.

## B. There were numerous acts or threats aimed at an objective not legitimate in the use of process.

As PMK observes, the tort of abuse of discretion also requires "some definite act or threat not authorized by the process, or aimed at objective not legitimate in the use of process." *Young*, 119 Hawai'i at 413-16, 198 P.3d at 676-79 (citing PROSSER AND KEATON ON TORTS § 121, at 898 (5th ed., W. Page Keeton *et. al.* eds., 1984)). There is no authority that suggests that the required act or threat occur only *after* or

even incidental to the use of the process – or even within the statute of limitations. A contrary holding would immunize tortfeasors who simply file some legal document subsequent to the improper acts or threats which is the opposite of the obvious intent of the Hawaii Supreme Court when it recognized the tort.

As shown above, there are *numerous* definite acts and threats aimed at the illegitimate objective (or ulterior purpose) of strong-arming Ms. Nolan into paying a balance that neither PMK nor their client could explain, which conveniently included its own indecipherable attorneys' fees, some of which were apparently never even billed to its client, the creditor. To summarize, these actions include:

- In the absence of any investigation as to the correctness of the balance, PMK made incalculable demands from Ms. Nolan on August 7, 2020, September 1, 2020, September 18, 2020, and January 13, 2021, Exhs. 1-5, CSF 26;

- On January 26, 2021, when responding to Ms. Nolan's attorney's inquiry (after having contacted Ms. Nolan directly when PMK knew she was represented), PMK simply attached the ledger which does not contain the demanded balances as justification for PMK's demands, Exhs. 4, 10; CSF 26.

- On December 18, 2020, PMK recorded a lien against Ms. Nolan's Unit claiming that Ms. Nolan owed the AOAO $10,015.21, another amount that appears nowhere on the ledger, Exh. 11; CSF 27, and/or

- PMK calculated the amount demanded in the Counterclaim, which does not appear on the ledger (which does not reflect and equal or greater amount owed until *three months later*) and includes PMK's own exorbitant attorneys' fees. Exh. 35, No. 21, p. 21; CSF 35.

Any of these demands or actions satisfy the "definite act or threat not authorized by the process" element of abuse of process in Hawaii.[2]

At the very least, there are genuine issues of material fact in this case as to both the "ulterior purpose" and "act or threat" elements of abuse of process. PMK is not entitled to summary judgment on this claim.

## IV.    THE IIED CLAIM ALSO SURVIVES.

### A. The Litigation Privilege does not apply.

Citing *Isobe v. Sakatani*, 127 Hawai'i 368, 384, 279 P.3d 33, 49 (App. 2012) PMK claims that

> The litigation privilege bars claims for intentional torts, too, with the exception of fraud, abuse of process, malicious prosecution, and acts of malice. *Id.*, 113 Hawai'i at 266–71, 151 P.3d at 747–52. Accordingly, and subject to those exceptions, the Litigation Privilege applies to all conduct by an attorney during the litigation process. *Isobe*, 127 Hawai'i at 384, 279 P.3d at 49.

*Dkt.* 47-1, p. 15.  This Court need look no further than the emphasized <u>heading</u> in *Isobe* to conclude that PMK purposefully omitted Abuse of Process from their list of torts that are exempt from the litigation privilege. *Isobe*, 127 Hawai'i at 384, 279 P.3d at 49 ("**2. *The Privilege Recognized in Kahala Royal Does Not Apply to***

---

[2] These definite acts or threats aimed at illegitimate objectives continue even now. During Ms. Nolan's deposition, defense counsel questioned Ms. Nolan about a newspaper article reporting Dennis' death, homelessness, and even showing his picture.  Neither that article nor any of those facts have anything to do with this case or the legal issues herein.

***Claims for Abuse of Process and Malicious Prosecution***") (emphasis in original).
In *Young*, noting that the tort actually resulted from abusive relationships and
"bullying" in the credit and insurance industries, <u>the Hawaii Supreme Court</u>
<u>specifically held that a Plaintiff may state a claim for IIED where process has been</u>
<u>abused (as in this case, discussed above)</u>:

> In the same way, a plaintiff may assert a claim for IIED for suffering
> from the defendant's conduct during a prior lawsuit. A party is not liable
> for merely 'insist[ing] upon his legal rights in a permissible way,' <u>but</u>
> <u>it may be liable for its conduct in the prior litigation that is not</u>
> <u>justifiable. In other words, the elements of IIED—though narrower and</u>
> <u>more refined than that of the tort of malicious defense—do not preclude</u>
> <u>a successful plaintiff from seeking damages for suffering from a third</u>
> <u>party's conduct in a previous lawsuit.</u>
>
> To illustrate, in this case, we are concluding that Young stated a claim
> for IIED based upon, among other things, the Defendants' conduct
> during the litigation. *See infra*

*Young*, 119 Haw. at 425–26, 198 P.3d at 688–89 (citations omitted) (emphases
added).  Here, as discussed in the Abuse of Process argument above, PMK's conduct
was not justifiable.  And, respectfully, Ms. Nolan is hard-pressed to define PMK's
conduct as anything other than bullying.  The litigation privilege does not save PMK.

**B. *There is ample evidence of outrageousness and severe emotional distress***

The parties agree that under Hawai'i law, the elements of IIED are:

> (1) that the act allegedly causing the harm was intentional or reckless,
> (2) that the act was outrageous, and (3) that the act caused (4) extreme
> emotional distress to another. The term 'outrageous' has been construed
> to mean "without just cause or excuse and beyond all bounds of
> decency."

11

*Enoka v. AIG Hawaii Ins. Co.*, 109 Haw. 537, 559, 128 P.3d 850, 872 (2006), *as corrected* (Feb. 28, 2006).

First, the conduct discussed in the Abuse of Process discussion above is sufficient to overcome summary judgment on the issue of whether PMK's conduct was "outrageous" enough to give rise to a claim of IIED.  This is not a run-of-the-mill foreclosure case as PMK would have this Court couch the facts.  Instead, this is a case where PMK:  *knew* or should have known that the balance Ms. Nolan actually owed was unknown; PMK ignored even inquiries by Ms. Nolan's attorney and continued to demand incalculable amounts, including its own purported attorneys' fees which were apparently not even billed to the creditor; and when Ms. Nolan finally gave in to her last resort of litigation, PMK doubled down and sought judicial foreclosure based on an amount that it "calculated" but is not even equaled or exceeded by the amount reflected in Ms. Nolan's ledger until <u>*three months* after the filing of the Counterclaim.</u>[3]  *See* CSF 23, 29 – 33.   *Young* specifically holds that analogous unjustified litigation tactics are sufficient to state a claim of IIED.  *Young*, 119 Haw. at 425–26, 198 P.3d at 688–89.

Second, Ms. Nolan has presented sufficient evidence of her emotional distress.  The Hawai'i Supreme Court has held that "extreme emotional distress" is

---

[3] This calculation can hardly be attributed to a "mathematical" error as PMK currently asserts. *See Dkt.* 47-1.

defined as, inter alia, "mental suffering, mental anguish, nervous shock, and other highly unpleasant mental reactions." *Enoka* 109 Hawaii at 559, 128 P.3d at 872. Additionally, "mental distress may be found where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Shoppe v. Gucci America, Inc.*, 94 Hawaii 368, 387, 14 P.3d 1049, 1068 (2000).

PMK relies on the unreported 2014 case styled *Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes*, No. CIV. 13-00669 HG-BMK, 2014 WL 2761744, at *21 (D. Haw. June 18, 2014) in support of its argument that there is no genuine issue of material fact as to the severity of Ms. Nolan's mental suffering. PMK's reliance on *Baham* is misplaced. <u>*Baham* and all relevant authorities on this issue analyze challenges to the sufficiency of the pleadings.</u>  *Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes*, No. CIV. 13-00669 HG-BMK, 2014 WL 2761744, at *22 (D. Haw. June 18, 2014) (holding that "generalized and conclusory allegations fail to satisfy the requirements of Federal Rule of Civil Procedure 8.  Plaintiff fails to allege the existence of special circumstances that would support a claim of outrageous conduct …"); *Dkt.* 47-1, p. 16 ("failed to allege").  If PMK were dissatisfied with Ms. Nolan's Complaint, it should have filed an appropriate Motion under Fed. R. Evid., Rules 8 and/or 12 rather than waiting until the opportunity to amend the Complaint has expired to advance an argument

based on the sufficiency of the pleadings under the guise of a Motion for Summary Judgment.  *See Baham*, *supra*. (finding that an amendment to the Complaint may cure the defect).

At this posture, PMK must contend with actual *evidence* that it has not and is unable to dispute.  Specifically, Ms. Nolan has offered unrebutted evidence that:

> I have suffered severe emotional distress, anxiety, and worry over these confusing demands from the AOAO.  This distress has manifested into physical symptoms.  I have suffered:
>
> •    Post Traumatic Stress Disorder insofar as each time I receive a letter in the mail that pertains to the condominium Unit, I experience fear and an overwhelming sense of despair and hopelessness.  This recently happened with a letter dated June 30, 2024. The letter stated that my account was delinquent.   After much effort and time including calls, emails, and certified letters to Hawaiiana and the AOAO Board I was able to get a resolution and an apology from the accountant for Hawaiiana, the property manager.  My account was not delinquent. Apparently, a mistake had been made.  Despite the resolution this letter caused a cascade of feelings a person would experience with a reoccurring nightmare.
>
> •    difficulty sleeping; lost sleep;
>
> •    feelings restlessness, tension and irritability;
>
> •    trouble concentrating and making decisions;
>
> •    a sense of fear, danger, panic and doom;
>
> •    muscle tension and spasms;
>
> •    feelings of weakness and of being tired;
>
> •    urges to avoid things that trigger anxiety;

- heart palpitations; and periods of sharp chest pain

- back aches, upper back pain radiating through my shoulders and neck;

- debilitating lower back pain including inflammation through the sacrioiliac joint at times causing pain walking;

- other aches and pains, include periodic pins and needles, tingling and loss of feeling in hands; and

- was prescribed a mouth guard to prevent damage to my teeth from grinding my teeth at night due to extreme stress and anxiety.

Nolan Decl. ¶ 31; CSF 36.  This is sufficient evidence of serious enough distress to maintain a claim of IIED under any interpretation of Hawaii law and, due to PMK's impropriety, is not "typical of any individual who had their house foreclosed." *Baham*, 2014 WL 2761744 *22 (citing *Velasco v. Sec. Nat. Mortgage Co.,* No. 10–00239, 2011 WL 2117008 (D. Haw. May 24, 2011)).

PMK also implies that because it continued unlawful collection efforts that had been ongoing for thirteen years, Ms. Nolan's severe emotional distress had been suffered for the same amount of time and PMK is entitled to summary judgment. *Dkt.* 47-1, p. 17.  That argument would require this Court decide causation – an issue that is almost universally held to constitute a question of fact for a jury.  *Mitchell v. Branch*, 45 Haw. 128, 140, 363 P.2d 969, 977 (1961) ("[b]eing a question of fact, the finding of proximate causation was the province of the trier of fact."); *McKenna*

15

*v. Volkswagenwerk Aktiengesellschaft*, 57 Haw. 460, 465, 558 P.2d 1018, 1022 (1977) (factual determination whether defendant's conduct was a substantial factor in bringing about the injury); *Doe Parents No. 1 v. State of Hawaiʻi, Dept. of Educ.*, 100 Hawaiʻi 34, 85, 58 P.3d 545, 596 (2002) (same); *Taylor-Rice v. State*, 91 Haw. 60, 76, 979 P.2d 1086, 1102 (1999) (whether injury was reasonably foreseeable is a question of fact and not of law); *Pulawa v. GTE Hawaiian Tel*, 112 Haw. 3, 13, 143 P.3d 1205, 1215 (2006) (same); *State v. Thompson*, 150 Haw. 466, 504 P.3d 1054 (Ct. App. 2022) (causation as an element of criminal offense is question for jury).

PMK is not entitled to summary judgment as to the IIED claim.

## V.    MS. NOLAN IS ENTITLED TO SUMMARY JUDGMENT AS TO THE FDCPA ISSUES

Notably, should it somehow convince this Court to grant summary judgment as to Ms. Nolan's tort claims, PMK gains little.  As this Court has observed "emotional distress damages are also available as part of actual damages under the FDCPA." *Galima v. Ass'n of Apartment Owners of Palm Ct.*, No. CV 16-00023 LEK-RT, 2019 WL 1982514, at *16 (D. Haw. May 3, 2019) (*citing McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 957–58 (9th Cir. 2011) (holding there was sufficient evidence to support the jury's award of $ 250,000 in actual damages, based on the plaintiff's testimony and that of his examining psychologist)).  Thus, even if this Court granted summary judgment as to the tort claims (which Ms. Nolan contends would be error), Ms. Nolan still stands to receive

*all* of the relief requested in her Complaint, *i.e.*, compensation for her emotional distress and other actual damages, entitling her to a full award of fees and costs.

Accordingly, PMK asserts barely straight-faced arguments as to two issues concerning the FDCPA, both of which are raised in Ms. Nolan's Motion for Partial Summary Judgment. Upon application of the actual law, Ms. Nolan is entitled to Partial Summary Judgment on both issues. Each is discussed below.

### A.    Ms. Nolan's was a "consumer debt."

This is an easy issue for this Court to decide summarily in favor of Ms. Nolan. It is telling that PMK entirely avoids citing the rule of law used to determine when a condominium assessment falls within the scope of protection of the FDCPA. Instead, PMK attempts to capitalize on Ms. Nolan's financial hardships (suffered by millions of Americans in 2008) and have this Court evaluate the use of the condominium <u>two years after the purchase</u> while framing Ms. Nolan as some uncaring commercial landlord willing to cast her brother into the streets solely for financial gain who is somehow at the same time unable to pay her assessments.[4] PMK's proposed analysis is not the law in this or any federal Circuit.

---

[4] Ms. Nolan objects to PMK's continuous inflammatory and defamatory remarks in regards to Ms. Nolan. Ms. Nolan has refrained from referring to PMK as "hucksters" and "con artists" despite her ability to cite far more supporting evidence from cases filed in this Court (including this one) than PMK has against Ms. Nolan.

The Eastern District of Michigan articulated the rule as to whether a condominium unit satisfies the "personal, family or household purposes" element of the FDCPA well:

> The FDCPA defines a 'debt' as 'any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for *personal, family, or household purposes.*' 15 U.S.C. § 1692a(5) (emphasis added).
>
> In order to determine whether a condominium assessment falls within this statutory definition, a court must examine "the purposes that the [owner] ha[d] for purchasing the [unit] ... **at the time of the [original purchase] transaction.**" *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 294 (6th Cir. 2012). **If the condominium owner originally bought the unit for personal, family, or household purposes, then a subsequent assessment by the condominium association is a "debt" for purposes of the FDCPA**.

*Camaj v. Makower Abbate Guerra Weggner Vollmer PLLC*, No. 19-CV-10179, 2019 WL 6037597, at *5 (E.D. Mich. Nov. 14, 2019) (emphases added); *Haddad*, 698 F.3d at 294 (FDCPA applies "[e]ven though [the plaintiff] no longer resides at the property, [where] he purchased the condominium for personal usage …").

Thus, it does not matter whether the Unit was used as a rental property *after* the purchase. Courts "must look to the purpose of the debt in determining whether it falls within the statutory definition." *In re Kelly*, 841 F.2d 908, 913 (9th Cir. 1988) (applying the almost identical definition of "consumer debt" from the bankruptcy code, *i.e.*, 11 U.S.C. §§ 101(4), (11)).

The rule that the relevant time period is at the time of purchase rather than the time of collection plainly applies in this Circuit (if not all Circuits).  See *Glawe v. Carpenter, Hazlewood, Delgado & Bolen PLC*, 859 F. App'x 102, 103–04 (9th Cir. 2021); *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1069 (9th Cir. 1992); *Newman v. Boehm, Pearlstein & Bright, Ltd.,* 119 F.3d 477, 481 (7th Cir.1997).  This Court's sister districts have repeatedly affirmed this "undisputed premise that the appropriate point in time for determining the character of a financial obligation is when the obligation arose" rather than default or when collection is attempted.  *Mlnarik v. Smith, Gardner, Slusky, Lazer, Pohren & Rogers, LLP*, No. 14-CV-01849-BLF, 2014 WL 6657747, at *3 (N.D. Cal. Nov. 21, 2014) (citing *Haddad* and *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC,* 214 F.3d 872, 874 (7th Cir. 2000); *Nochez v. L. Off. of Tary C. Loomis-Therrien*, No. EDCV1500937VAPKKX, 2015 WL 13916248, at *4 (C.D. Cal. Aug. 3, 2015) (same); *Porras v. Vial Fotheringham LLP*, No. 3:13-CV-00699-BR, 2015 WL 2449486, at *12 (D. Or. May 21, 2015) (finding "the reasoning in *Haddad* and *Newman* to be persuasive.").  Thus, "the [C]ourt should examine plaintiffs' intent at the time she purchased her condominium" not at the time of default or collection. *Beeks v. ALS Lien Servs.*, No. CV 12-2411 FMO PJWX, 2014 WL 7785745, at *4 (C.D. Cal. Feb. 18, 2014) (finding *Haddad* "particularly persuasive" … "especially given the Ninth Circuit's admonition to " 'examine the transaction as a whole,'

paying particular attention to 'the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature'" because "'[t]he most probative time in determining the purposes that the individual has for purchasing a property is at the time of the transaction, not when an agency's collection efforts begin,'") (quoting *Haddad*, *supra*.).

The fact that Ms. Nolan never lived in the condominium is just as inconsequential as the timing of the default or collection. It is just as well established that Ms. Nolan's sibling living in the Unit qualifies as a "personal, family or household purpose" under the FDCPA. Courts that have addressed the issue have held that real property used as a residence for a family member is primarily for "family" or "household purposes" <u>even where the property is rented to family members</u>. *Shames-Yeakel v. Citizens Financial Bank*, 677 F.Supp.2d 994, 1002-03 (D. Conn. 2009) (overwhelmingly for "family" or "household" purposes where Plaintiff considered the property an "investment" property, planned to sell the property for a profit); *Cathie P. Allen, et. al. v. BRT Utility Corp.*, *et. al.*, 3:95CV00221 (WWE), 1996 WL 776583 at *3-4 (D. Conn. October 24, 1996) (contemporaneous occupancy not required and FDCPA applied to water bill that was incurred when Plaintiffs did not live in the home where the home was rented to family members who intermittently paid rent); *Hughes v. Cardinal Federal S&L Ass'n*, 566 F.Supp. 834 (S.D. Ohio 1983) (Plaintiff did not live in house but was

occupied by son as well as other family members who rented the upstairs); *Tower v. Moss*, 625 F.2d 1161 (5th Cir. 1980) (loan primarily for personal, family, or household purposes where the home had long been occupied by Plaintiff's family members who died and left the home to Plaintiff who never lived there and rented the home to tenants but expressed an intent to live there upon her retirement).

It is undisputed that Ms. Nolan's obligation to pay the assessments arose when she became record owner of the property in 2006 and that her brother Dennis lived in the Unit until 2008.  CSF 1-6.  PMK does not and cannot cite a single fact to refute any of the dispositive facts proven by Ms. Nolan.  The sole fact that PMK does present that is remotely relevant to the intended use of the Unit at the time of purchase *corroborates* Ms. Nolan's evidence.  *See* Dkt. 47-1, p. 5; Exh. 16, p. No. 13, p. 13 (admitting Dennis "appears" to have lived in the Unit around April 30, 2007).  It was *Dennis* who responded to the AOAO's "concerns" in 2007 – a year after Ms. Nolan became the owner and became obligated to pay the assessments.  *Id.*

Instead of asserting anything that would remotely even create genuine issues of material fact in its favor, PMK invites this Court to determine that PMK requested documents that were not produced (because they do not exist), and therefore, Ms. Nolan must be lying.  See *Dkt.* 47-1 4-5; See Exh 16, Nos. 13-14.   Does PMK actually expect this Court to find an absence of genuine issues of material fact because PMK asked for nearly 20-year-old tax returns and/or a lease between

siblings (that never existed) or other unidentified imagined documents?[5]  Were it even tempted, this Court is not permitted to "resort to speculation and surmise." *Nat'l Indus., Inc*, 677 F.2d at 1267.  After all, the facts are uncontested that until 2008, Dennis did not pay rent and only contributed to the maintenance fees intermittently when he could.  *Dkt.* 48 ¶¶ 12-14 (PMK CSF).  PMK fails to even create a "metaphysical doubt" as to the existence of any genuine issue of material fact that would dispute Ms. Nolan's unrefuted testimony.  *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586.  PMK's argument is a red herring attempt to disguise that not only is PMK precluded from summary judgment on this issue, but instead that Ms. Nolan is so entitled.[6]

The law is well established.  The facts are uncontested.  And to adopt PMK's position would require this Court to change the law and ignore the facts.  Accordingly, Plaintiff's "obligation ... to pay money ar[ose] out of a transaction in

---

[5] Moreover, if PMK actually believed that the law could apply as it proposes (*i.e.*, the Court could ignore the purpose of the actual transaction and instead rely on the subsequent use of the property), why would PMK even attempt this straw-grasping impeachment of Ms. Nolan by directing the Court's attention to these imagined missing documents?  PMK knows that Dennis having left in 2008 is completely irrelevant to this analysis but has [necessarily] omitted any discussion of the relevant law from its brief.

[6] Even if a Defendant could successfully cite a Plaintiff's inability to produce 20-year-old documents (that never existed and/or the contents and even existence of which are merely speculated), PMK has waived this issue by failing to even file a Motion to Compel in regards to the purported "non-disclosure."

which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes[.]" *McNair v. Maxwell & Morgan PC*, 893 F.3d 680, 683 (9th Cir. 2018); see also *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 989–90 (9th Cir. 2017) (concluding that attorneys' collection letter regarding failure to pay homeowner's assessment fee constituted debt collection under the FDCPA).

Obviously recognizing that its argument is wholly unsupported by applicable law and the facts of this case, PMK erects a strawman by apparently arguing that because Ms. Nolan was forced into bankruptcy after the property was used as a rental property, this Court should consider that bankruptcy proceeding as a separate title transfer thus exculpating PMK from its fraudulent conduct under the FDCPA. *Dkt.* 47-1, p. 21. This argument is frivolous as <u>PMK admits that the creditor *never took title to the condominium*</u>. *Id*. ("Wells Fargo declined to take title …").

There is no genuine issue of material fact and Ms. Nolan [not PMK] is entitled to summary judgment on this issue.

**B.**   ***PMK's Misleading and False Counterclaim was a communication under the FDCPA.***

PMK would have this Court hold that debt collectors are immunized from liability under the FDCPA where the debt collector's violative conduct occurs at any time after the consumer retains counsel. The holding of *Guerrero*, by its plain language, is limited to *letters from debt collectors addressed solely to the*

*consumer's attorney. Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (holding "that communications directed solely to a debtor's attorney are not actionable under the Act."); see also *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031–32 (9th Cir. 2010) ("a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f.").  Here, there is no letter addressed solely to Ms. Nolan's counsel and, instead, the communication is the Counterclaim that PMK filed against Ms. Nolan. Not only are lawyers obligated to communicate such filings to their clients, see HRPC 1.4, but also PMK attached to the Counterclaim a notice that addressed Ms. Nolan directly as required by Hawaiʻi law. Exhibit One pdf pp. 27-49. And, the entire filing was provided to Ms. Nolan as PMK <u>now admits it intended,</u> Exh. 16, No. 24, p. 22; See Nolan Decl. ¶ 25

This issue is fully briefed in Ms. Nolan's Motion for Partial Summary Judgment and there is no need (or space) to repeat the entirety here. *Dkt.* 43-1, pp. 5-9  In summary, PMK's argument must be rejected because:

1.    FDCPA exemption is irreconcilable with the holding of *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (which presents strikingly analogous facts to these, see *Donohue*, 592 F.3d at 1032) and the 1986 *repeal* of a statutory provision exempting attorneys from the definition of "debt collector." See *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 951 (9th Cir. 2011);

24

2.      Since the Ninth Circuit decided *Guerrero*, the Supreme Court has held that "foreclosure is a means of collecting a debt. And a business pursuing nonjudicial foreclosures would, under the capacious language of the Act's primary definition, be one that regularly collects or attempts to collect, directly or indirectly debts." *Obduskey v. MacCarthy & Holthus*, 586 U.S. 466, 474-75 (2019); and

3.      Several sister District Courts have rejected the argument that a claim is immune from the application of the FDCPA under *Guerrero*, see *Reyes v. Kenosian & Miele, LLP*, 619 F. Supp. 2d 796, 801–04 (N.D. Cal. 2008), including the District of Oregon which has squarely concluded "that a counterclaim for a debt is not a representation made to an attorney, but rather a demand for money made on the debtor, through a pleading rather than a letter or a phone call." *Avery v. Gordon*, No. 08-139-HU, 2008 WL 4793686, at *8–9 (D. Or. Oct. 27, 2008).

PMK's motion should be denied and Ms. Nolan's granted.

## CONCLUSION

PMK's Motion as to the tort claims should be denied and Ms. Nolan's Motion as to the FDCPA issues should be granted.

DATED:  Honolulu, Hawaii, October 11, 2024

*s/Richard L. Holcomb*
Richard L. Holcomb (9177)

Attorney for Plaintiff Maureen Nolan
