GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

CALVIN E. YOUNG          3278-0
  cyoung@goodsill.com
DAVID J. HOFTIEZER        9976-0
  dhoftiezer@goodsill.com
NICHOLAS K. KIDO          11333-0
  nkido@goodsill.com
STEVEN T. WALL            10910-0
  swall@goodsill.com
First Hawaiian Center, Suite 1600
999 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 547-5600
Facsimile:  (808) 547-5880

Attorneys for Defendant
PORTER MCGUIRE KIAKONA, LLP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MAUREEN NOLAN,<br><br>             Plaintiffs,<br><br>     vs.<br><br>PORTER MCGUIRE KIAKONA, LLP,<br><br>        Defendants. | CASE NO. 1:23-CV-00271-DKW-WRP<br><br>**DEFENDANT PORTER MCGUIRE KIAKONA, LLP'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF 43]**; CERTIFICATE OF SERVICE<br><br>Hearing Date:     November 1, 2024<br>Hearing Time:     9:00 a.m.<br><br>Trial Date:   January 27, 2025<br>Judge:        Hon. Derrick K. Watson<br>Related ECF Nos.:  43, 44 |

i

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...........................3

    A.      The Unit...................................................................................3

    B.      The Underlying Dispute.........................................................4

    C.      PMK's Involvement ...............................................................6

    D.      Additional Uncorroborated Background from Plaintiff................7

III.    LEGAL STANDARDS.............................................................................8

    A.      Summary Judgment...............................................................8

    B.      Burden of Proof .....................................................................9

    C.      Violations of FDCPA Sections 1692e and 1692f.............10

IV.     ARGUMENT...........................................................................................11

    A.      Plaintiff Must Meet Her Burden for Every Element of Each
           Claim.....................................................................................11

    B.      Plaintiff's FDCPA Claims Are Limited to the State
           Counterclaim .......................................................................12

    C.      The FDCPA Does Not Apply to Plaintiff's Claims Because
           the Unpaid Assessments Were Not A Protected "Consumer
           Debt".....................................................................................14

           1.      The FDCPA Only Applies to "Consumer Debts"...............14

           2.      The Court Must Examine the Transaction as a Whole,
                    Including Actual Use, To Determine Nature of Debt.........15

           3.      Plaintiff's Motion Fails Because Debt is Commercial........18

    D.      Plaintiff Fails to Meet Her Burden of Establishing that The
           AOAO's State Counterclaim Violated the FDCPA. .....................20

           1.      The AOAO's Counterclaim Does Not Violate the
                    FDCPA as a Matter of Law.................................................20

      **2.**    **Plaintiff Fails to Establish that AOAO's Counterclaim was Materially Misleading to the Least Sophisticated Debtor**............................................................**22**

**V.**    **CONCLUSION** ..................................................................................**25**

12376417.3

# TABLE OF AUTHORITIES

## Cases

*Adickes v. S. H. Kress & Co.*,
  398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ...........................................9

*Bloom v. I.C. Sys., Inc.*,
  972 F.2d 1067 (9th Cir. 1992) ............................................... 15, 16, 17

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ........................................9

*Donohue v. Quick Collect, Inc.*,
  592 F.3d 1027 (9th Cir. 2010) ..................................................... passim

*Faria v. M/V Louise*,
  945 F.2d 1142 (9th Cir. 1991) ............................................................10

*Frappied v. Affinity Gaming Black Hawk, LLC*,
  966 F.3d 1038 (10th Cir. 2020) ...........................................................25

*Glawe v. Carpenter, Hazlewood, Delgado & Bolen PLC*,
  859 Fed. Appx. 102 (9th Cir. 2021) (unpublished) ...........................................16

*Guerrero v. RJM Acquisitions LLC*,
  499 F.3d 926 (9th Cir.2007) ........................................... 11, 20, 21, 22

*Heejoon Chung v. U.S. Bank, N.A.*,
  250 F.Supp.3d 658 (D. Haw. 2017) ........................................... 10, 11

*Heintz v. Jenkins*,
  514 U.S. 291, 115 S.Ct. 1489 (1995) ....................................................21

*Hoover v. Switlik Parachute Co.*,
  663 F.2d 964 (9th Cir. 1981) .............................................................9

*In re Cherrett*,
  873 F.3d 1060 (9th Cir. 2017) ...........................................................17

*In re Kelly*,
  841 F.2d 908 (9th Cir. 1988) ............................................................16

12376417.3

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
    559 U.S. 573, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010) ......................................12

*Johnson v. Wells Fargo Home Mortg., Inc.*,
    No. 3:05-CV-0321-RAM, 2007 WL 3226153 (D. Nev. Oct. 29, 2007).............18

*Kitamura v. AOAO of Lihue Townhouse*,
    No. CIV. 12-00353 LEK, 2013 WL 1398058 (D. Haw. Mar. 29, 2013).............18

*Mahone v. Lehman*,
    347 F.3d 1170 (9th Cir. 2003) ..............................................................................19

*Miller v. Glenn Miller Productions, Inc.*,
    454 F.3d 975 (9th Cir. 2006) ...................................................................................9

*Orr v. Bank of Am., NT & SA*,
    285 F.3d 764 (9th Cir. 2002) ................................................................................19

*Phillips-Foster v. UNUM Life Ins. Co. of Am.*,
    302 F.3d 785 (8th Cir. 2002).................................................................................25

*Poller v. Columbia Broadcasting System, Inc.*,
    368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) .................................................9

*Rotkiske v. Klemm*,
    589 U.S. 8, 140 S.Ct. 355 (2019) ................................................................. 12, 13

*Schaffer ex rel. Schaffer v. Weast*,
    546 U.S. 49, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005) .........................................10

*Sherman v. British Leyland Motors, Ltd.*,
    601 F.2d 429 (9th Cir. 1979) ..........................................................................9, 1

*Slenk v. Transworld Sys., Inc.*,
    236 F.3d 1072 (9th Cir. 2001) ................................................................... passim

*Tourgeman v. Nelson & Kennard*,
    900 F.3d 1105 (9th Cir. 2018) ................................................................. 9, 10, 11

**Statutes**

15 U.S.C. § 1692a(3) ...............................................................................................14

12376417.3

15 U.S.C. § 1692a(5) ....................................................................... 12, 14

15 U.S.C. § 1692e .................................................................. 10, 11, 22, 23

15 U.S.C. § 1692k............................................................................ 12, 13

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq* ......................... passim

U.S.C. § 1692f.................................................................... 10, 11, 22, 23

## Rules

Fed. R. Civ. P. 56(c)...............................................................................9

Fed. R. Civ. P. 56(e)..............................................................................19

Fed. R. Evid. 801 ..................................................................................19

Fed. R. Evid. 802 ..................................................................................19

Local Rule 7.4 .......................................................................................24

12376417.3

**DEFENDANT PORTER MCGUIRE KIAKONA, LLP'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF 43]**

Defendant PORTER MCGUIRE KIAKONA, LLP ("PMK"), by and through its attorneys, Goodsill Anderson Quinn & Stifel, LLP, respectfully submits this memorandum in opposition to Plaintiff MAUREEN NOLAN's Motion for Partial Summary Judgment [ECF 43] (the "MPSJ").

## I.    INTRODUCTION

Despite the volume of Plaintiff's Complaint and the nebulous, unsupported mathematical gymnastics of Plaintiff's Motion, the core issues of this lawsuit are simple. First, Plaintiff admittedly owed a lot of unpaid maintenance fees and late fees to the Association of Apartment Owners at Mokuleia Sands ("AOAO") in relation to Unit 110 (the "Unit"), which Plaintiff rented out for at least the last 16 years to generate income for herself. The facts and the Unit's actual use establish that Plaintiff's "debt" was incurred primarily for that commercial purpose. The protections of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), however, only extend to monetary obligations incurred primarily for a personal, family, or household purpose. As a result, Plaintiff's commercial debt is outside the protections of the FDCPA and her FDCPA claim fails as a matter of law.

Second, the Ninth Circuit Court of Appeals has explained that the protections of the FDCPA do not apply to communications made to and through counsel. This

is because FDCPA protections designed to address communications that could confuse "the least sophisticated consumer" are not implicated when the communication at issue through an attorney, who is presumed to be able to interpret, explain, and challenge the communication on behalf of the consumer client. This is also fatal to Plaintiff's FDCPA claims because the only communication that occurred within the FDCPA's one year statute of limitations is a Counterclaim PMK filed on behalf of the AOAO—*after* Plaintiff had sued the AOAO to challenge her debt—and that was undisputedly served on Plaintiff's counsel. As a result, that Counterclaim is not actionable under the FDCPA and, once again, Plaintiff's FDCPA claims fail as a matter of law.

All of Plaintiff's other arguments and claims based on older correspondence, including ledgers prepared by the AOAO's management company, are time-barred; Plaintiff's June 29, 2023 Complaint (and this MPSJ) is limited to FDCPA claims arising after June 29, 2022. As a result, the vast majority of the Complaint and the events discussed in support of the MPSJ are distractions from the fact that Plaintiff's debt is not protected by and the Counterclaim is not actionable under the FDCPA.

Plaintiff bears the burden of establishing that there are no genuine issues of material fact with respect to the claims discussed in her Motion. Plaintiff declined to produce or proffer any of the documents, communications, bank records, or witness testimony needed to support her allegations. Instead, the Motion is entirely based on

self-serving and unsupported testimony that simply repeats the allegations of the Complaint. This is insufficient to meet Plaintiff's burden, especially when the record—sparse as it is—is viewed in a light most favorable to PMK. Plaintiff's MPSJ should be DENIED.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises entirely from an underlying dispute between the Plaintiff and the AOAO about unpaid maintenance fees and other assessments Plaintiff owed regarding Unit 110 (the "Unit") at the Mokuleia Sands (the "Underlying Dispute"). *See* PMK's (1) Response to Plaintiff's Concise Statement of Facts in support of Plaintiff's MPSJ, Filed August 28, 2024 [ECF 44], and (2) Concise Statement of Facts in Support of PMK's Memorandum in Opposition to Plaintiff's MPSJ, Filed August 28, 2024 [ECF 43], at Section II ("DCS"), ¶ 1; Ex. A ("Complaint"). [1]

### A.     The Unit

Plaintiff's mother, Mary Nolan ("Mary"), purchased the Unit ins 2003. DCS ¶ 1, Ex. A at ¶ 7; Ex. B at ¶ 9; Ex. C at 24:5-10, 137:3-10; Ex. D at ¶ 3; Ex. H at 1-3.  Plaintiff claims to have visited the Unit several times but never lived in the Unit or used the Unit as her residence, because she has been a resident of Washington

---

[1] Citations to Defendant's Responsive Concise Statement of Facts in Opposition of Plaintiff's Motion are abbreviated as "DCS." Unless otherwise noted, all numbered exhibits referenced herein are attached to the D attached the Declaration of Counsel ("Decl. of Counsel") filed concurrently with the DCS. The term "Exhibit" is abbreviated as "Ex."

for over 30 years and owned her own home there. DCS ¶ 2, Ex. C. at 15:21-16:9, 20:4-15, 89:14-22; Ex. E at Resp. 1.

In August 2006, Mary prepared two deeds regarding the Unit. DCS ¶ 3, Ex. C. at 54:20-61:14, 99:5-101:14. The first deed, filed on September 7, 2006, transferred title to the Unit to Mary and Plaintiff as tenants in common. DCS ¶ 3, Ex. F; Ex. C. at 54:20-61:14, 99:5-101:14; Ex. D at ¶ 4. Later, on October 6, 2006, Plaintiff and Mary transferred title to Plaintiff, alone. *Id.* In support of her MPSJ, Plaintiff signed a declaration testifying that: "in October 2006, [she] purchased the Unit for fair market value from her mother. Plaintiff's Concise Statement of Facts in Support of Plaintiff's Motion for Partial Summary Judgment [ECF 44] ("PCOF"), ¶ 3; Decl. of Maureen Nolan at ¶ 5. However, a title report Plaintiff prepared for the Unit shows that both transfers were for "$0." DCS ¶ 3, Ex. C. at 54:20-61:14, 99:5-101:14; Ex. H ("Title Report") at 2. Plaintiff did not dispute the accuracy of the Title Report. Ex. C. at 99:2-101:14

B.    **The Underlying Dispute**

It is undisputed that, since 2006, Plaintiff has been the owner of the Unit by way of the Apartment Deed dated August 29, 2006. *See* DCS ¶ 4; Ex. A at ¶ 7; Ex. B at ¶ 9; Ex. T ("AOAO's State Counterclaim") at Exhibit "A"; Ex. Y at ¶ 2. It is also undisputed that the Unit is located within the condominium project known as Mokuleia Sands, and governed by the AOAO pursuant to the provisions of Chapter

514B of the Hawaii Revised Statutes ("HRS"), as amended.[2] *See* DCS ¶ 6; Ex. A at ¶¶ 7-11; Ex. B at ¶ 3; Ex. T at ¶ 1; Ex. Y at ¶ 2. Pursuant to the Governing Documents, Plaintiff was obligated, as the owner of the Unit, to pay maintenance fees and other assessments to the AOAO, which Plaintiff admits. DCS 7, Ex. A at ¶ 11; Ex. C at 135:22-136:21; Ex. at 3, 19-22, 47, 49, 53. Plaintiff, as the sole title holder, was responsible for the Unit and its related assessments from the AOAO. *Id.*

Plaintiff alleges that she began renting the Unit on May 23, 2008, and that the Unit has generally been rented continuously since May 23, 2008, with only limited periods of vacancy between extended lease periods. *See* DCS ¶ 8; Ex. E at Request 16; *see also*, Ex. B, ¶ 10. Plaintiff asserts that, in 2009 and while she was renting the Unit for income, she fell behind on maintenance fees she owed to the AOAO. DCS ¶ 9, Ex. A, ¶ 12; Ex. C at 81:2-82:4.

Plaintiff alleges that her account with the AOAO was current as of January 1, 2009, and that thereafter, the AOAO began to assert that the Plaintiff's account with the AOAO that was associated with the Unit held a delinquent, outstanding balance

---

[2] It is also undisputed that the AOAO is organized and existing pursuant to that certain Declaration of Horizontal Property Regime of Mokuleia Sands dated June 13, 1975, recorded in the Bureau of Conveyances of the State of Hawaii on June 17, 1975 as Document No. 75-42160, as amended, and the By-Laws of Association of Apartment Owners of Mokuleia Sands, adopted June 13, 1975 by the AOAO's Board of Directors, as amended (the Declaration and Bylaws are collectively referred to with all rules and policies enacted by the AOAO as, the "Governing Documents"). *See* DCS ¶ 5; Ex. T at ¶ 2; Ex. Y at ¶ 2 (admitting ¶ 2 of Ex. Y).

12376417.3

("Unpaid Assessments"). *See* DCS ¶ 11; Ex. A, ¶ 12. According to the Plaintiff, the AOAO and its agents sought to enforce the Governing Documents against the Plaintiff and obtain payment of the Unpaid Assessments since at least 2010. *See* DCS ¶ 12; Ex. A, ¶ 30; Ex. B, ¶ 11-16.

### C. PMK's Involvement

While the Underlying Dispute between the Plaintiff and the AOAO dates as far back as 2010 (or earlier), it is undisputed that PMK had no contact with the Plaintiff until PMK issued a letter to Plaintiff, as attorneys for the AOAO, dated August 7, 2020, relating to the Unpaid Assessments. *See* DCS ¶ 13; Ex. A at ¶74; Ex. C at 120:9-20, Ex. D at ¶11; Ex. P; *see also* PCOF at Ex. 2. Thereafter, Plaintiff asserts that PMK issued letters and filed liens dated between September 18, 2020 up to **January 26, 2021**. *See* PCOF Exs. 2-5, 11. In response, Plaintiff retained additional legal counsel and, on December 29, 2021, filed a lawsuit against the AOAO and Hawaiiana Management Ltd. (the "State Litigation") for damages and to have the court determine how much money she owed for maintenance, late, and attorney's fees. *See* DCS ¶ 14; Ex. B; Ex. C at 91:13-92:16, 130:6-132:4-24; Ex. Q; Ex. R; *see also,* PCOF ¶ 29; PCOF at Ex. 2. As counsel for the AOAO, PMK then filed the AOAO's Answer to Plaintiff's Complaint and a compulsory Counterclaim for foreclosure on the Unit, which were directed to and served on Plaintiff's counsel through the court's JEFS system. *See* DCS ¶ 15; Ex. B, ¶¶ 24-66; Ex. B; Ex. C at

91:13-92:16, 130:6-132:4-24; Ex. Q; Ex. R; Ex. T.

### D. Additional Uncorroborated Background from Plaintiff

Per Plaintiff, Mary initially purchased the Unit to serve as Dennis's primary residence and home. DCS ¶ 16, Ex. C at 51:21-52:17, 68:11-69:8, 136:22-138:15; Ex. D at ¶¶4-5. Per Plaintiff, Mary's intent was allegedly to provide Dennis with a permanent residence, as Dennis suffered from depression and could not support himself. DCS ¶ 16, Ex. C at 51:21-52:17, 68:11-69:8, 136:22-138:15; Ex. D at ¶¶ 4-5. In October 2006, Plaintiff borrowed $200,000 from Wells Fargo and secured on the Unit. DCS ¶ 17, Ex. I at 9; Ex. C at 46:2-47:22; Ex. D at ¶5. Mary then allegedly transferred the Unit to Plaintiff in exchange for the proceeds of the Wells Fargo Mortgage, with an understanding that the Unit would be primarily used for Dennis. DCS ¶ 18, Ex. C at 46:2-47:22, 133:3-19, 135:6-21; Ex. J at Resp.10-14; Decl. of Counsel at ¶24. Plaintiff further asserts that she and Mary initially had an agreement that Plaintiff would be responsible for the mortgage payments while Mary would continue to cover expenses, maintenance fees, and other costs on the Unit. *Id*. Plaintiff produced no documents or communications to corroborate this testimony. DCS ¶ 19, Ex. C at 72:22-73:15; Ex. J at Resp.10-14; Decl. of Counsel at ¶ 24.

Sadly, and on November 27, 2006, Mary Nolan suffered an unexpected cardiac event and passed away. DCS ¶ 20, Ex. C at 43:18-24; Ex. K; Ex. D at ¶ 6. According to Plaintiff, Plaintiff began covering all of the expenses on the Unit even

though (1) she just lost her mother's support and (2) supposedly did not charge or ask Dennis for rent. DCS ¶ 21, Ex. C at 75:18-76:17; Ex. J at Resp.10-14; Ex. D at ¶ 6, Decl. of Counsel at ¶ 24. These statements are impossible to vet, however, because—as noted above—Plaintiff did not produce any records that would normally document how a property was acquired, transferred, and managed. DCS ¶¶ 21-22, Ex. J at Resp.10-14; Decl. of Counsel at ¶ 24.

In around 2008, Plaintiff asserts that she began asking Dennis to pay rent for the Unit. DCS ¶ 23, Ex. C at 74:23-76:1, 106:6-21; Ex. D at ¶8. Apparently, Dennis could not to pay rent and, despite insisting that "the Unit was intended to provide a residence" for Dennis, Plaintiff asked Dennis to move out. DCS ¶ 24, Ex. C at 105:20-106:21, 107-9-18. This left Dennis houseless and to live on the street. *Id*.

Since May 2008, the Unit has been rented nearly continuously and used, exclusively, to generate income. DCS ¶ 24, Ex. E at Resp.16-17; Ex. B at ¶ 10; Ex. C at 74:14-25, 77:17-81:1. This means that neither Plaintiff nor any of her family members visited the Unit since May 2008. *Id*. This also meant that Dennis remained on the street while Plaintiff rented out what was supposed to be his home. DCS ¶ 25, Ex. C at 50:11-51:7; Ex. N.

## III.  LEGAL STANDARDS

### A.  Summary Judgment

It is well settled that it is the burden of the moving party to demonstrate the

absence of any material fact. Fed. R. Civ. P. 56(c); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The record on summary judgment must be viewed in the light most favorable to the party opposing the motion. *Poller, supra* at 473, 82 S.Ct. at 491. Even where no evidence is presented in opposition to the motion, summary judgment should not be granted if the evidence in support of the motion is insufficient. *Adickes,* 398 U.S. at 160, 90 S.Ct. at 1609-10; *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439 (9th Cir. 1979); *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 967 (9th Cir. 1981).

Summary judgment is appropriate where "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it could affect the outcome of the suit under governing substantive law. *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

## B.    Burden of Proof

It is "one of the most basic propositions of law [. . .] that the plaintiff bears the burden of proving his case, including the amount of damages." *Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1109 (9th Cir. 2018) (interpreting the FDCPA

and quoting *Faria v. M/V Louise*, 945 F.2d 1142, 1143 (9th Cir. 1991); *see also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). "Absent some reason to believe that Congress intended otherwise, therefore, we will conclude that the burden of [proof] lies where it usually falls, upon the party seeking relief." *Tourgeman*, 900 F.3d at 1109 (quoting *Schaffer*).

With respect to the FDCPA, it is well-settled that the plaintiff bears the burden of establishing that the FDCPA has been violated. *See, e.g., Heejoon Chung v. U.S. Bank, N.A.*, 250 F.Supp.3d 658, 689 (D. Haw. 2017); *see also Tourgeman*, 900 F.3d at 1109 (noting affirmative defenses under the FDCPA are the only exceptions to the default rule that plaintiffs bear the burden of proving their case). Accordingly, Plaintiff bears the burden of establishing that there is no genuine issue of material fact as to each element of Plaintiff's affirmative claims under the FDCPA.

## C.   Violations of FDCPA Sections 1692e and 1692f

The two FDCPA provisions at issue in this case are 15 U.S.C. §§ 1692e ("Section 1692e") and 1692f ("Section 1692f"). Section 1692e prohibits the use by a debt collector of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e(2) prohibits "[t]he false representation of ... the character, amount, or legal status of any debt." Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." "The collection of any amount ... unless such amount

is expressly authorized by the agreement creating the debt or permitted by law" is a violation of Section 1692f. 15 U.S.C. § 1692f(1).

Whether conduct violates Section 1692e or Section 1692f requires an objective analysis that takes into account whether "the least sophisticated debtor would likely be misled by a communication." *See Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (internal quotation marks omitted); *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 934 (9th Cir.2007). However, not all false statements violate the FDCPA. The Ninth Circuit Court of Appeals (the "Ninth Circuit") has expressly held that "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under [Section] 1692e or [Section] 1692f." *Donohue*, 592 F.3d at 1033. Thus, in order to prevail on its claims under Section 1692e and 1692f, Plaintiff must establish that there is no genuine issue of material fact that a given representation by PMK was: (1) false or misleading; and (2) that the alleged representation was *materially* false. *Id.*

## IV.   ARGUMENT

### A.   Plaintiff Must Meet Her Burden for Every Element of Each Claim

As previously noted, it is well-settled that the plaintiff bears the burden of establishing that the FDCPA has been violated. *See Heejoon Chung*, 250 F.Supp.3d at 689; *Tourgeman*, 900 F.3d at 1109. As such, and for the MPSJ, Plaintiff must

establish that there is no genuine issue of material fact as to each element of her FDCPA claims. To that end, Plaintiff must, *at minimum*, establish: (1) that Plaintiff's claims are timely; and (2) that the FDCPA applies to the Plaintiff's alleged claims. *See e.g., Rotkiske v. Klemm*, 589 U.S. 8, 13, 140 S.Ct. 355, 360 (2019) (discussing the applicable statute of limitations); *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1074-75 (9th Cir. 2001) (FDCPA only applies to obligations incurred primarily for personal, family, or household purposes); *Donohue*, 592 F.3d at 1030 (communications sent to/received by the debtor's attorneys are not actionable); 15 U.S.C. §§ 1692a(5), 1692k(d).

To the extent any claims are timely and otherwise actionable, Plaintiff also bears the burden of establishing that PMK violated the FDCPA as well as the extent of her damages. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 578, 130 S.Ct. 1605, 1609, 176 L.Ed.2d 519 (2010) (successful Plaintiffs are entitled to damages); 15 U.S.C. § 1692k. As shown below, Plaintiff failed to satisfy her burden on these elements and Plaintiff's MPSJ should be DENIED.

### B.     Plaintiff's FDCPA Claims Are Limited to the State Counterclaim

The FDCPA unequivocally mandates that all claims under the statute must be brought within *one* year of the alleged violation. 15 U.S.C. § 1692k(d). Importantly, the limitations period begins to run on the date the alleged violation occurred, not the date it is discovered, because the discovery rule does not apply to FDCPA claims.

*Rotkiske*, 589 U.S. at 13, 140 S.Ct. at 360. In this case, the Complaint in the instant lawsuit was filed on June 29, 2023. DCS Ex. A at 1. Thus, any alleged FDCPA violations occurring before June 29, 2022 are time barred.

This precludes PMK's liability under the FDCPA for the vast majority of alleged conduct discussed in Plaintiff's Complaint and MPSJ, which describe conduct starting in 2009—when Plaintiff first became delinquent—and which PMK was not involved with. The only alleged communication by PMK that occurred during the one-year limitations period is the AOAO's State Counterclaim that PMK filed and served upon Plaintiff's <u>attorneys</u> on August 19, 2022. PCOF, Ex. 1-5, Ex. 11; DCF ¶ 15, Ex. S, Ex. T at 50, Ex. U. Though Plaintiff's MPSJ fixates on various ledgers from the AOAO, none of those ledgers were attached to the AOAO's State Counterclaim. DCS ¶ 28, Ex. T; *see also,* PCOF, Ex. 1. Nor were such documents otherwise communicated by PMK to the Plaintiff within the one-year limitations period. *See, e.g.,* PCF, ¶¶ 26-27, Ex. 2-5, 11 (citing communications in 2020-2021).

Given that the ledgers were not communicated with the AOAO's Counterclaim, those ledgers are not actionable under the FDCPA as a matter of law, because their communication to the Plaintiff occurred before June 29, 2022. 15 U.S.C. § 1692k(d). Thus, to the extent Plaintiff's MPSJ seeks relief based on claims or assertions that the ledgers are misleading or otherwise violate the FDCPA, such claims are clearly barred by the one-year statute of limitations, and the MPSJ must

12376417.3

be DENIED as to those claims.

The only alleged communication identified in the Complaint that occurred within the limitations period is the AOAO's State Counterclaim. Thus, Plaintiff is limited to its claims that the AOAO's State Counterclaim violates the FDCPA. For the reasons described below, the Plaintiff fails to satisfy its burden, and the Plaintiff's MPSJ should be DENIED.

### C. The FDCPA Does Not Apply to Plaintiff's Claims Because the Unpaid Assessments Were Not A Protected "Consumer Debt"

### 1. The FDCPA Only Applies to "Consumer Debts"

The term "consumer" is defined under the FDCPA as meaning: "any natural person obligated or allegedly obligated to pay any **debt**." 15 U.S.C. § 1692a(3) (emphasis added). Thus, whether a party satisfies the definition of a "consumer" under the FDCPA depends, in part, on whether they are obligated or allegedly obligated to pay a "**debt**." *See, e.g., Slenk*, 236 F.3d at 1074-75; 15 U.S.C. §§ 1692a(3), 1692a(5). The FDCPA expressly states: "[a]s used in this subchapter-- [. . .] the term '**debt**' means any obligation or alleged obligation of a of a consumer to pay money arising out of a transaction in which the [. . .] property [. . .] which [is] the subject of the transaction [is] primarily for personal, family, or household purposes[.]" 15 U.S.C. 1692a(5) (emphasis added); *Slenk*, 236 F.3d at 1074-75.[3] As

---

[3] PMK does not dispute that Plaintiff qualifies as a living "natural person." Rather, PMK disputes whether the Plaintiff qualifies as a natural person that is obligated or

a result, the Ninth Circuit interprets the FDCPA as applying solely to "consumer debt," defined as, "the obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the [. . .] property [. . .] which [is] the subject of the transaction [is] *primarily for personal, family, or household purposes*." *Id.* (emphasis in original).

On the other hand, the Ninth Circuit confirmed that the FDCPA does *not* apply to financial obligations that are primarily commercial in nature or which otherwise arise primarily from business transactions. *See, e.g., Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) (FDCPA inapplicable where funds were used to invest in a company). Thus, as a threshold matter, to prevail on her claims under Count I, the Plaintiff bears the burden of establishing that the FDCPA applies. Plaintiff cannot prevail where the alleged financial obligations were not incurred primarily for family, personal, or household reasons. *Bloom*, 972 F.2d at 1068.

### 2. The Court Must Examine the Transaction as a Whole, Including Actual Use, To Determine Nature of Debt

Hoping to minimize the significance of Plaintiff's admission-against-interest (that Plaintiff utilized the Unit almost exclusively as an income-generating rental property), Plaintiff urges this court to limit its inquiry to the facts surrounding Plaintiff's initial acquisition of the Unit when determining whether the Unpaid

---

allegedly obligated to pay a "**debt**" as defined by the FDCPA.

Assessments were incurred primarily for family, personal, or household reasons. *See* MPSJ at 11-12. Citing to *In re Kelly*, an unpublished opinion from the Eastern District of Michigan, and the unpublished memorandum opinion in *Glawe*, Plaintiff argues that, "[i]t does not matter whether the Unit was used as a rental property *after* [it was acquired]" because this Court examines only the debtor's initial purpose for incurring the alleged obligation. *See* MPSJ at 11-12 (citing *Glawe v. Carpenter, Hazlewood, Delgado & Bolen PLC,* 859 Fed. Appx. 102, 103-04 (9th Cir. 2021) (unpublished) ("*Glawe*"), and, *In re Kelly*, 841 F.2d 908, 913 (9ᵗʰ Cir. 1988) ("*Kelly*"). However, Plaintiff's argument is far off-mark.

Not only is Plaintiff's reliance on *Glawe* and *Kelly* misplaced,[4] Plaintiff's interpretation of the law is also misleading and fundamentally wrong. Though Plaintiff is correct that, to determine whether the transaction was primarily consumer or commercial in nature, the court must "'examine **the transaction as a whole**,' paying particular attention to 'the purpose for which the [financial obligation] was [incurred,]" the inquiry is not limited solely to examining the initial purpose for the transaction. *Slenk*, 236 F.3d at 1075 (quoting *Bloom*, 972 F.2d at 1068, and examining all facts surrounding the purchase of equipment, including how the equipment was ultimately used) (emphasis added). Rather, the Ninth Circuit insists

---

[4] *Glawe* is an unpublished, memorandum opinion, which is not precedent within the Ninth Circuit. U.S. Ct. of App. 9th Cir. Rule 36-3(a). The *Kelly* opinion was issued in 1988, and does not account for subsequent interpretations of the FDCPA.

12376417.3

that the Court must consider *actual use*—how the funds received or property purchased from the transaction were either spent or used. *See, e.g., Bloom*, 972 F.2d at 1068 (examining how funds were actually spent); *Slenk,* 236 F.3d at 1075 (examining how property was actually used). Where the purpose of the transaction is overwhelmingly centered around business or commercial interests, the transaction and its related financial obligations are not "primarily for personal, family, or household purposes." *Bloom*, 972 F.2d at 1068 (holding investment in a company was primarily a business purpose and not a personal, family, or household purpose).

Thus, while courts must examine the initial intent of a party incurring a financial obligation, initial intent is not dispositive, and the Ninth Circuit holds that the "primary purpose" may only be determined after also considering the *actual use* of the funds or property in the transaction. *Slenk*, 236 F.3d at 1075-76. In fact, the Ninth Circuit explained that a review of all facts, including *actual use*, may establish that the primary purpose for the transaction was different than originally intended. *Id.* (concluding facts about actual use of a backhoe purchased through and by a business proved the backhoe was used strictly for personal use, rather than for the purchasing business); *see also In re Cherrett*, 873 F.3d 1060, 1072–73 (9th Cir. 2017) (Nguyen, J., dissenting) (explaining that, in *Slenk*, the Court looked to "the actual use to which [a] backhoe was put" in concluding that its financing was consumer debt because "the backhoe was used strictly for personal use, and was

never used by [the owner's company]") (quotations original).

That being said, financial obligations that are primarily commercial in nature are not transformed into "consumer debts" merely because they support a personal, family, or household benefit. *Kitamura v. AOAO of Lihue Townhouse*, No. CIV. 12-00353 LEK, 2013 WL 1398058, at *5 (D. Haw. Mar. 29, 2013) ("[T]he evidence shows that the property was not used primarily for personal, family, or household purposes. Plaintiffs did not use the property as a primary residence, but intended for the property's rental income to provide a source of funding for personal expenses."); *Johnson v. Wells Fargo Home Mortg., Inc.*, No. 3:05-CV-0321-RAM, 2007 WL 3226153, at *9 (D. Nev. Oct. 29, 2007) (properties used for rental income and not as a residence are not for personal, family or household purpose even if income was used for retirement planning). Thus, to prove that the Unpaid Assessments are a "consumer debt" under the FDCPA, the Plaintiff must establish facts that demonstrate that the overall purpose for incurring the Unpaid Assessments— including her well-documented actual use—was primarily for "personal, family, or household" reasons, rather than commercial or business-related interests. *Id.*

### 3. Plaintiff's Motion Fails Because Debt is Commercial

Plaintiff's MPSJ fails to establish that there is no genuine issue of material fact that Plaintiff incurred her obligation to pay the Unpaid Assessments primarily for personal, family, or household reasons. First, all of Plaintiff's evidence

18

supporting her assertion that the Unit was acquired and used for personal, family, or household purposes is inadmissible hearsay. Fed. R. Evid. 801-802. A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). In this case, Plaintiff's sole support for her alleged purpose is her self-serving declaration that testifies to out-of-court statements between Plaintiff, Mary, and/or Dennis, and which are offered to prove the truth of the matter asserted therein. PCS, Nolan Decl. at ¶¶ 3 (that Mary stated that she purchased the Unit for her brother), 4 (that Mary stated that she was putting Plaintiff on the deed to the Unit to ensure Dennis could continue living in the Unit), 5 (that Mary agreed to sell Plaintiff the Unit to assist Plaintiff's sister; that Mary stated she intended that the Unit continue to be used as a residence for Dennis; and that Mary stated that she planned to live in the Unit during the winter), 8 (that Plaintiff asked Dennis to leave the Unit temporarily in 2008). Such statements are inadmissible hearsay, and are insufficient to satisfy Plaintiff's burden on summary judgment. *Mahone v. Lehman*, 347 F.3d 1170, 1173 (9th Cir. 2003) (discussing inferences).

Nevertheless, even if such evidence is admissible, Plaintiff's admissions-against-interest that the Unit has been used almost exclusively for income-generating purposes is sufficient to establish that there is a genuine issue of material fact as to whether, in light of Plaintiff's testimony as to stated purpose and actual use, the

Plaintiff's acquisition of the property was for primarily for personal, family, or household purposes. *Slenk*, 236 F.3d at 1075-76 (reversing summary judgment).

**D.    Plaintiff Fails to Meet Her Burden of Establishing that The AOAO's State Counterclaim Violated the FDCPA.**

**1.    The AOAO's Counterclaim Does Not Violate the FDCPA as a Matter of Law**

The AOAO's Counterclaim is also not actionable under the FDCPA as a matter of law because the Counterclaim was served solely and directly upon Plaintiff's counsel and not upon the Plaintiff herself. Ex. T at 50; Ex. U. The Ninth Circuit has expressly held that communications which are directed solely to a consumers' attorney are not actionable under FDCPA. *Guerrero*, 499 F.3d at 934 ("We [. . .] hold that communications directed solely to a debtor's attorney are not actionable under the [FDCPA]."); *see also Donohue*, 592 F.3d at 1032 ("In *Guerrero*, we concluded that communications sent only to a debtor's attorney are not actionable under the FDCPA."). The reasoning behind *Guerrero* is that the FDCPA is intended to protect unsophisticated debtors from abuse, harassment, and deceptive collection practices. *Id.* at 939. As such, communications violate the FDCPA if they are likely to mislead the "least sophisticated debtor." *Id.* However, attorneys possess the exact degree of sophistication and legal wherewithal that individual debtors do not. *Id.* Thus, the Ninth Circuit has held that "[w]hen the recipient of the communication is solely a debtor's attorney, the FDCPA's purpose

of protecting unsophisticated consumers is not implicated." *Donohue*, 592 F.3d at 1032 (citing, *Guerrero*, 499 F.3d at 939).

Similarly, and although pleadings *may* be actionable under the FDCPA, the recognized precedent of the Ninth Circuit establishes that complaints served solely and directly upon a debtor's attorney are subject to the limited exception recognized in *Guerrero* and are not actionable under the FDCPA. *Donohue*, 592 F.3d at 1031–32. In *Donohue*, the Ninth Circuit specifically held that "a complaint *served directly on a consumer* to facilitate debt-collection efforts is a communication subject to the requirements of the [FDCPA]." *Donohue*, 592 F.3d at 1031–32 (emphasis added). The specific language of the Ninth Circuit's holding in *Donohue* is critical because the Ninth Circuit was making a distinction; it did *not* hold that *all* complaints are communications subject to the FDCPA, nor that complaints served solely upon a debtor's attorney are communications subject to the FDCPA. *Id.* This distinction was intentional, and the Ninth Circuit explained that *Guerrero* to applies to all litigation activities, including complaints, and not just letters. *Id.*

Specifically, the Ninth Circuit explained that *Guerrero* recognizes a limited exception to the rule that the FDCPA applies to all litigation activities of attorneys regularly engaged in debt-collection efforts, which was established in *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489 (1995). *Donohue*, 592 F.3d at 1032. The Ninth Circuit explained that *Heintz* "only addressed the question of whether the FDCPA

applies to [litigation activities], but *Heintz* did not address how the *identity of the recipient* of the communication impacts FDCPA liability." *Id. Guerrero* therefore clarifies that where the recipient is the debtor's attorney, the FDCPA does not apply. *Id.* As such, the Ninth Circuit explained that because the complaint had been served *directly upon the debtor*, *Guerrero* was inapplicable, and the requirements of the FDCPA applied. Neither *Guerrero* or *Donohue* have been overruled.

It is undisputed that the Counterclaim was served solely and directly upon Plaintiff's counsel via the State of Hawaii's JEFS electronic filing system. *See* Ex. 1, at Exhibit 16. As a result, the Counterclaim is not actionable under the FDCPA because the Plaintiff's attorneys, rather than Plaintiff herself, were the sole recipients of the alleged communication. *Donohue*, 592 F.3d at 1032. The Counterclaim did not violate the FDCPA as a matter of law and the MPSJ should be DENIED.

### 2. Plaintiff Fails to Establish that AOAO's Counterclaim was Materially Misleading to the Least Sophisticated Debtor

Whether conduct violates Section 1692e or Section 1692f requires an objective analysis that takes into account whether "the least sophisticated debtor would likely be misled by a communication." *Donohue*, 592 F.3d at 1030 (cleaned up); *Guerrero,* 499 F.3d at 934 (same). However, not all false statements violate the FDCPA. The Ninth Circuit has expressly held that "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under [Section] 1692e or [Section] 1692f." *Donohue*,

12376417.3

592 F.3d at 1033. Thus, in order to prevail on its claims under Section 1692e and 1692f, Plaintiff must establish that there is no genuine issue of material fact that a given representation by PMK was: (1) false or misleading; and (2) that the alleged representation was *material*. *Id.*

Plaintiff does the opposite. Plaintiff's MPSJ broadly asserts that PMK violated Section 1692e and Section 1692f of the FDCPA by misrepresenting the character, amount, or legal status of the amount sought from the Plaintiff in the AOAO's Counterclaim. As a preliminary matter, the AOAO's Governing Documents clearly authorize the AOAO to file the Counterclaim, and there is no evidence that PMK lacked an appropriate authorization before taking action against the Plaintiff. Further, while Plaintiff argues that the AOAO's Counterclaim misrepresented the amounts Plaintiff allegedly owed, Plaintiff's MPSJ fails to explain how or why the amounts stated in the AOAO's Counterclaim are inaccurate. Critically, Plaintiff's MPSJ is devoid of any opinion as to what the AOAO's Counterclaim *should have stated*. Plaintiff does not show her math because she did not do the math, either directly or through an expert accountant.

In an attempt to mask Plaintiff's inability to prove that the AOAO's Counterclaim is false, Plaintiff focuses her MPSJ solely upon the ledger and PMK's prior correspondence. MPSJ at 20-25. After a tortured and incomprehensible analysis, Plaintiff concludes: "No one knows the correct balance." *Id.* at 25. This

statement is fatal to Plaintiff's motion, because it is a clear admission that Plaintiff is unable to establish that the AOAO's Counterclaim is *materially inaccurate*.

Whether the ledgers and letters are false or misleading is wholly immaterial to this case, because, as previously explained, Plaintiff is limited by the applicable statute of limitations to claims based on the AOAO's Counterclaim. *See supra,* Section I.B. Similarly, the commercial nature of Plaintiff's "debt" and the fact that the Counterclaim was served on counsel (and not Plaintiff) preclude Plaintiff's FDCPA claims. Nonetheless, the MPSJ's bare assertion that the ledger misapplied the AOAO's policies and represents an inaccurate accounting of Plaintiffs' transactions, is wholly unsupported by any affidavit. L.R.7.4. In fact, a complete reading of the AOAO's 30(b)(6) deposition indicates only that the AOAO's witnesses could not explain various entries without more information, and ultimately were instructed by attorneys at Ekimoto & Morris to enter certain adjustments to correct the ledger. *See e.g.*, Ex. O at 163:1-165:10, 171:16-172:25, 246:1-249:24, 255:13-25, 257:7-11, 260:7-16, 266:3-10, 284:4-287:4, 289:10-291:25, 292:25-293:18, 293:25-295:7. Critically, calculating the value of Plaintiff's obligation appears to require more than basic arithmetic and necessitates an understanding of accounting principles (such as how interest is applied, and various fees and assessments are to be allocated), which is precisely the type of specialized knowledge and training that is outside the general knowledge of lay people and for

which expert testimony should be required. *Phillips-Foster v. UNUM Life Ins. Co. of Am.*, 302 F.3d 785, 797 (8th Cir. 2002); *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1057 (10th Cir. 2020). Plaintiff has not identified any expert witnesses nor any expert reports, and Plaintiff may not, herself, submit expert opinions under the guise of Rule 801. In any event, the opinions and unsupported conclusions of Plaintiff's counsel are in unavailing. The Plaintiff has not shown that there is no genuine issue of material fact as to whether the AOAO's Counterclaim as misleading to the least sophisticated consumer. The MPSJ should be DENIED.

## V.     CONCLUSION

In light of the foregoing, Plaintiff has not and cannot meet her burden of proof and her Motion should be DENIED.

DATED:  Honolulu, Hawaii, October 11, 2024.

*/s/ David J. Hoftiezer*
CALVIN E. YOUNG
DAVID J. HOFTIEZER
STEVEN T. WALL

Attorneys for Defendant
PORTER MCGUIRE KIAKONA, LLP

12376417.3