TERRANCE M. REVERE (HI Bar No. 5857)
Revere and Associates
Pali Palms Plaza
970 North Kalaheo Street, Suite A301
Kailua, Hawaii 96734
Telephone No: (808) 791-9550
terry@revereandassociates.com

BRUCE F. SHERMAN (HI Bar No. 5996)
1050 Bishop St., Suite 509
Honolulu, HI 96813
Telephone No: (808) 221-0901
bfs@bfshermanlaw.com

RICHARD L. HOLCOMB (HI Bar No. 9177)
Holcomb Law, LLLC
733 Bishop St. Suite 1478
Honolulu, Hawaii 96813
Telephone No: (808) 545-4040
rholcomblaw@gmail.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| MAUREEN NOLAN, | Case No. 1:23-CV-00271 DKW-WRP |
| Plaintiff, | |
| v. | REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF MAUREEN NOLAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT; CERTIFICATE OF SERVICE |
| PORTER MCGUIRE KIAKONA, LLP, | |
| Defendant. | |

# TABLE OF CONTENTS

I.     **ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*1. The debt arises from a transaction entered
   into for personal purposes.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*2. The Counterclaim is a communication under the FDCPA.* . . . . . . . 6

*3. PMK blatantly violated the FDCPA.* . . . . . . . . . . . . . . . . . . . . . . 7

*4. Ms. Nolan's evidence is obviously sufficient.* . . . . . . . . . . . . . . . . 12

II.    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160–61 (1970) . . . . . . . . . . . 12

*Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067 (9th Cir. 1992) . . . . . . . . . . . . . . . . 3

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010) . . . . . . . . . . . 10

*Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*,
698 F.3d 290 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Heintz v. Jenkins*, 514 U.S. 291 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hoover v. Switlik Parachute Co.*, 663 F.2d 964 (9th Cir. 1981) . . . . . . . . . . . 12-13

*In re Cherrett*, 873 F.3d 1060 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . 4-5

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
637 F.3d 939 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Newman v. Boehm, Pearlstein & Bright, Ltd.*,
119 F.3d 477 (7th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Obduskey v. MacCarthy & Holthus*, 586 U.S. 466 (2019) . . . . . . . . . . . . . . 7

*Reyes v. Kenosian & Miele, LLP*, 619 F. Supp. 2d 796 (N.D. Cal. 2008) . . . . 7

*Vasserman v. Henry Mayo Newhall Mem'l Hosp.*,
65 F. Supp. 3d 932 (C.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

***Unreported Cases***

*Avery v. Gordon,* No. 08-139-HU,
2008 WL 4793686 (D. Or. Oct. 27, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

*Beeks v. ALS Lien Servs.*, No. CV 12-2411 FMO PJWX,
2014 WL 7785745 (C.D. Cal. Feb. 18, 2014) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010) . . . . . . . . . . . 6

*Glawe v. Carpenter, Hazlewood, Delgado & Bolen PLC*,
859 F. App'x 102 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007) . . . . . . . . . 6

*Johnson v. Wells Fargo Home Mortg., Inc.*, No. 3:05-CV-0321-RAM,
2007 WL 3226153 (D. Nev. Oct. 29, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kitamura v. AOAO of Lihue Townhouse*, No. CIV. 12- 00353 LEK,
2013 WL 1398058 (D. Haw. Mar. 29, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mlnarik v. Smith, Gardner, Slusky, Lazer, Pohren & Rogers, LLP*,
No. 14-CV-01849-BLF, 2014 WL 6657747 (N.D. Cal. Nov. 21, 2014) . . . . 3

*Nochez v. L. Off. of Tary C. Loomis-Therrien*,
No. EDCV1500937VAPKKX,
2015 WL 13916248 (C.D. Cal. Aug. 3, 2015) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Porras v. Vial Fotheringham LLP*, No. 3:13-CV-00699-BR,
2015 WL 2449486 (D. Or. May 21, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Scarlet Honolulu, Inc. v. Honolulu Liquor Comm'n*,
No. CV 21-00457 MWJS-KJM,
2024 WL 4444298 (D. Haw. Oct. 8, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Town of Colorado City, Arizona*,
No. 3:12-CV-8123-HRH, 2015 WL 11163601 (D. Ariz. Mar. 16, 2015) . . . . 11

Preliminarily, PMK does not challenge the fact that Ms. Nolan is a natural person who was alleged to have owed a debt. Thus, Ms. Nolan is entitled to Summary Judgment as to the issue of whether she is a consumer under 15 U.S.C. § 1692a(3). *Dkt.* 43-1, pp. 9-11.

Similarly, PMK does not challenge the fact that it is a "debt collector" within the meaning of the FDCPA. *See Dkt.* 43-1, pp. 14-19. Thus, Ms. Nolan is also entitled to Summary Judgment as to the "debt collector" element of the FDCPA.

PMK offers unconvincing arguments as to the remainder of Ms. Nolan's issues raised in her Motion for Partial Summary Judgment. Each is discussed below.

## I. ARGUMENT

PMK alleges that Ms. Nolan "owed a lot" of maintenance and late fees. *Dkt.* 61, p. 1. "Owing a lot" is not a license to demand fabricated amounts, particularly in court filings, and does not excuse PMK's violations under the FDCPA's strict liability mandates. Moreover, PMK continues with its consistent theme that Ms. Nolan is simultaneously a deadbeat and a greedy commercial real estate entrepreneur who was willing to toss her mentally ill brother into the streets to turn a buck. PMK's continued *ad hominem* attacks reveal its honest beliefs as to the strength of its arguments. Here, the facts are uncontested and the law is clear. PMK's efforts to obscure and evade should be flatly rejected.

## 1. *The debt arises from a transaction entered into for personal purposes.*

It is undisputed that, since 2006, Plaintiff has been the owner of the Unit by way of the Apartment Deed dated August 29, 2006. *Dkt.* 61, p. 4. It is undisputed that "[p]ursuant to the Governing Documents, Plaintiff was obligated, as the owner of the Unit, to pay maintenance fees and other assessments to the AOAO." *Id.*, p. 5. PMK does not and cannot offer a single fact that contradicts Ms. Nolan's Declaration:[1]

> 3. The Unit was purchased in 2000 by my mother to be used as a residence for my brother, Dennis. Dennis resided in the Unit and family members would stay in the Unit when visiting Oahu.
>
> 4. In 2006, my mother retired from her position as the Director of the Head Start program on Kauai. My mother wanted my name on the deed as she was retired, would be traveling away from Hawaii, and if she died or became incapacitated, she was assured that Dennis could continue living in the Unit.
>
> 5. However, my mother decided to assist my sister in purchasing a home in Idaho. Accordingly, in October 2006, I purchased the Unit for fair market value from my mother. The Unit was intended to continue to be used as a residence for Dennis and my mother also planned to reside there during the winter months. Additionally, family members would continue stay at the Unit when visiting Oahu.

---

[1] PMK instead claims that Ms. Nolan's Declaration is "hearsay." See *Dkt.* 61, pp. 18-19. Perhaps counsel's understanding of the Rules of Evidence could stand refinement but counsel is unable to identify a single hearsay statement in the quoted (and dispositive) paragraphs of her Declaration. Moreover, it is unclear how Ms. Nolan's own subjective intent could possibly be interpreted as hearsay.

*Dkt.* 44-1 ¶¶ 3-5.  Indeed, the *only* fact remotely related to this issue that PMK has ever asserted throughout the course of this entire litigation (which was included within the Responses to Ms. Nolan's Requests for Admissions that Judge Porter had to force PMK to answer, *see Dkt.* 52) *corroborates* Ms. Nolan's uncontested testimony that Dennis lived in the Unit from 2006 to 2009.  *See Dkt.* 60-18, p. 13 ("PMK ADMITS that it is aware of documents that indicate that Plaintiff's brother, Dennis Nolan, lived in the Unit on or about April 30, 2007, and ADMITs that Dennis Nolan appears to have lived in the Unit on or around that date").

These simple uncontroverted facts are dispositive of this issue.  The rule that the relevant time is the time of purchase rather than the time of default or collection plainly applies in this Circuit (if not all Circuits).  See *Glawe v. Carpenter, Hazlewood, Delgado & Bolen PLC*, 859 F. App'x 102, 103–04 (9th Cir. 2021); *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1069 (9th Cir. 1992); *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290 (6th Cir. 2012); *Newman v. Boehm, Pearlstein & Bright, Ltd.,* 119 F.3d 477, 481 (7th Cir.1997).  This Court's sister districts have repeatedly affirmed this "undisputed premise that the appropriate point in time for determining the character of a financial obligation is when the obligation arose" rather than default or when collection is attempted.  *Mlnarik v. Smith, Gardner, Slusky, Lazer, Pohren & Rogers, LLP*, No. 14-CV-01849-BLF, 2014 WL 6657747, at *3 (N.D. Cal. Nov. 21, 2014) (citing *Haddad* and *Miller v.*

*McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC,* 214 F.3d 872, 874 (7th Cir. 2000); *Nochez v. L. Off. of Tary C. Loomis-Therrien*, No. EDCV1500937VAPKKX, 2015 WL 13916248, at *4 (C.D. Cal. Aug. 3, 2015) (same); *Porras v. Vial Fotheringham LLP*, No. 3:13-CV-00699-BR, 2015 WL 2449486, at *12 (D. Or. May 21, 2015) (finding "the reasoning in *Haddad* and *Newman* to be persuasive."). Thus, "the [C]ourt should examine plaintiffs' intent at the time she purchased her condominium" not at the time of default or collection. *Beeks v. ALS Lien Servs.*, No. CV 12-2411 FMO PJWX, 2014 WL 7785745, at *4 (C.D. Cal. Feb. 18, 2014) (finding *Haddad* "particularly persuasive" … "especially given the Ninth Circuit's admonition to " 'examine the transaction as a whole,' paying particular attention to 'the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature'" because "'[t]he most probative time in determining the purposes that the individual has for purchasing a property is at the time of the transaction, not when an agency's collection efforts begin,'") (quoting *Haddad*, *supra*.).

PMK does not cite a single case with a contrary holding. The closest that PMK can come to a straight-faced argument on this issue is citing *In re Cherrett*, 873 F.3d 1060, 1067–68 (9th Cir. 2017). However, PMK's reliance on *Cherrett* is misplaced as there the facts presented the "unusual situation where a person accepts a loan from his employer as part of a larger transaction to further his career." *In re*

4

*Cherrett*, 873 F.3d 1060, 1069 (9th Cir. 2017). Both the BAP and the Ninth Circuit found numerous facts that showed that Cherrett *never intended* to use the condo for personal or family purposes, but instead it was simply a "holding place" that allowed him to work at a more prestigious job than was available where his residence remained. *Id*. Moreover, Cherrett only received the loan because his employer advanced it to him. *Id*. Thus, the holding of *Cherrett* is consistent with the authorities cited by Ms. Nolan. Indeed, the Ninth Circuit specifically analyzed the intent *at the time the loan was incurred*. *Id*. ("Cherrett further testified that when he incurred the Housing Loan, his family did not intend to relocate to Colorado with him, and he considered the condominium a 'place holder.'") (emphasis added). Thus, unlike Ms. Nolan, Cherrett did not intend to use the condo for family or household purposes at the time the obligation was incurred.

Similarly, Ms. Nolan does not dispute this Court's holdings in *Kitamura v. AOAO of Lihue Townhouse*, No. CIV. 12- 00353 LEK, 2013 WL 1398058 (D. Haw. Mar. 29, 2013) or *Johnson v. Wells Fargo Home Mortg., Inc.*, No. 3:05-CV-0321-RAM, 2007 WL 3226153, at *9 (D. Nev. Oct. 29, 2007). In those cases, both properties were *always* intended to be rental properties. Thus, a holding that those Plaintiffs were not protected by the FDCPA is a correct application of the law.

This Court should reject PMK's invitation to change the law for PMK's benefit. PMK requests a ruling that would, at the very least, require this Court to

take a position contrary to specific Ninth Circuit precedent and create an intra-Circuit split (which would then invite the Ninth Circuit to create an actual Circuit split should the ruling be upheld). The undisputed facts show that the transaction from which the obligation arose, *i.e.*, the purchase of the condo from which the obligation to pay fees and assessments arose, was clearly for family and personal purposes. Ms. Nolan is entitled to summary judgment on this issue.

### 2. *The Counterclaim is a communication under the FDCPA.*

As briefed several times relevant to these competing Motions for Summary Judgment, the holding of *Guerrero*, by its plain language, is limited to *letters from debt collectors addressed solely to the consumer's attorney*. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (holding "that communications directed solely to a debtor's attorney are not actionable under the Act."); see also *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031–32 (9th Cir. 2010) ("a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f."). <u>Here, there is no letter addressed solely to Ms. Nolan's counsel and, instead, the communication is the Counterclaim that PMK filed against Ms. Nolan.</u> Not only are lawyers obligated to communicate such filings to their clients, see HRPC 1.4, but also PMK attached to the Counterclaim a notice that addressed Ms. Nolan directly as required

6

by Hawai'i law. *See Dkt.* 43-1, p. 6. And, the entire filing was provided to Ms. Nolan as PMK <u>now admits it intended</u>, *Id.*; *Dkt.* 44-1 ¶ 25.

This issue is fully briefed in Ms. Nolan's Motion for Partial Summary Judgment. *Dkt.* 43-1, pp. 5-9 In summary, PMK's argument must be rejected because:

1. FDCPA exemption is irreconcilable with the holding of *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (which presents strikingly analogous facts to these, see *Donohue*, 592 F.3d at 1032) and the 1986 *repeal* of a statutory provision exempting attorneys from the definition of "debt collector." See *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 951 (9th Cir. 2011);

2. Since the Ninth Circuit decided *Guerrero*, the Supreme Court has held that "foreclosure is a means of collecting a debt. And a business pursuing nonjudicial foreclosures would, under the capacious language of the Act's primary definition, be one that regularly collects or attempts to collect, directly or indirectly debts." *Obduskey v. MacCarthy & Holthus*, 586 U.S. 466, 474-75 (2019); and

3. Several sister District Courts have rejected the argument that a claim is immune from the application of the FDCPA under *Guerrero*, see *Reyes v. Kenosian & Miele, LLP*, 619 F. Supp. 2d 796, 801–04 (N.D. Cal. 2008), including the District of Oregon which has squarely concluded "that a counterclaim for a debt is not a representation made to an attorney, but rather a demand for money made on the

debtor, through a pleading rather than a letter or a phone call." *Avery v. Gordon*, No. 08-139-HU, 2008 WL 4793686, at *8–9 (D. Or. Oct. 27, 2008).

This Court should reject PMK's invitation to hold that debt collectors are immunized from liability under the FDCPA where the debt collector's violative conduct occurs at any time after the consumer retains counsel. Such an extraordinary holding would contradict binding authority and does not promote the policy of the FDCPA.

### 3. *PMK blatantly violated the FDCPA.*

PMK presents a hodgepodge of thin arguments in hopes that something sticks. Consistent with the remainder of its Response, what PMK fails to produce *is a single fact* that contradicts any of those presented by Ms. Nolan. Indeed, PMK dodges this issue entirely, *carefully avoiding any representation that it did demand a correct balance*. PMK resorts to the same type of desperate straw-grasping that it raised when arguing that the condo transaction was not intended for personal or family purposes, speculative tactics which are insufficient to overcome Ms. Nolan's entitlement to summary judgment as to both issues.

On the other hand, Ms. Nolan has presented numerous detailed and undisputed facts showing definitively that the amount demanded by PMK in its Counterclaim misrepresented the amount owed. Not the least of which is the indisputable fact that the amount due as stated on the ledger did not exceed $25,000

until November 2022, three months after the filing of the Counterclaim. *Dkt.* 43-1, p. 20. And, the only additional legal fees that appear on the ledger from August of 2022 until April of 2023 is a single entry for $693.75 in March of 2023. *Id*. Thus, the balance demanded in the Counterclaim cannot be dependent upon attorneys' fees incurred in drafting the Counterclaim. This, alone, entitles Ms. Nolan to summary judgment as to whether the FDCPA was violated.

Nevertheless, as in the Complaint, Ms. Nolan presented detailed explanations of the reasons why the ledger itself cannot be relied upon to calculate a correct balance. *Id*. pp. 22-23. Ms. Nolan also presented the *unrefuted testimony of PMK's client,* AOAO Mokuleia Sands, the debtor for whom PMK was purportedly collecting the debt, where its 30(b)(6) designees **admitted** that: 1) late fees were never properly calculated since the AOAO's late fee policy was adopted in 2012; and 2) Ms. Nolan (and hence the least sophisticated consumer) could never have known how the late fee was calculated. *Dkt.* 43-7, pp. 23-24. Game, set, match.

There is no genuine issue of material fact as to whether PMK misrepresented the amount of the debt and/or attempted to collect amounts that were not expressly authorized by the agreement creating the debt. There is no genuine issue of material fact as to whether the least sophisticated consumer would be misled by the amounts PMK attempted to collect.

PMK can dismiss this incontrovertible dispositive evidence as "mathematical gymnastics" to its heart's desire. Its argument that Plaintiff "fails to explain how or why" the amounts demanded are false and incorrect is obviously baseless. Ms. Nolan remains entitled to summary judgment on this issue.

PMK suggests that Ms. Nolan's Motion be denied because "critically" she has not spent thousands of dollars on an expert forensic accountant to sort PMK's mess. Ms. Nolan not required to calculate a correct balance. *Instead, Ms. Nolan only need show that the balances demanded would confuse the <u>least sophisticated consumer</u>*. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010). Despite all its bluster, PMK has not offered a single explanation as to how on earth the least sophisticated consumer would not be confused by the balance it demanded. It can't. Indeed, PMK, despite its sophistication in having made thousands of demands from condo owners, is itself confused and has not even attempted to explain how it "calculated" the demanded balance. From Ms. Nolan's perspective, use of a lottery ball machine may have produced a less confusing balance.

Not to be deterred, PMK argues that testimony regarding the balances must be made by an expert. It does not require an expert to compare the demands to the ledger, or to simply calculate the interest rate that must have been applied to calculated the demands. *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F.

Supp. 3d 932, 947 (C.D. Cal. 2014) ("Vasserman does not explain why simple mathematical calculations constitute expert testimony. ... A declarant need not be an expert witness to offer this type of testimony. The court therefore concludes that Puleo does not offer expert testimony and overrules Vasserman's objections under Rules 701, 702, and 704"); *United States v. Town of Colorado City, Arizona*, No. 3:12-CV-8123-HRH, 2015 WL 11163601, at *1 (D. Ariz. Mar. 16, 2015) ("calculations with respect to the Cities' water contract and actual culinary water distribution involves no specialized knowledge, no technical matters, and no scientific matters. Mr. Komm's testimony relies upon nothing more than data received by him from the Cities, the 1,200 gpm contract amount, and simple mathematical calculations based on that information); *Scarlet Honolulu, Inc. v. Honolulu Liquor Comm'n*, No. CV 21-00457 MWJS-KJM, 2024 WL 4444298, at *1 (D. Haw. Oct. 8, 2024) (recounting finding of genuine dispute of material fact based on lay witness' testimony in regards to data which proponent argued was "a matter of simple arithmetic").

PMK also argues that "Plaintiff's MPSJ fixates" on the ledger, none of which were attached to the AOAO's Counterclaim. *Dkt.* 61, p. 13. Plaintiff agrees that the ledgers are not communications under the FDCPA but evidence that PMK's actual communication violated the FDCPA. Ms. Nolan has never alleged that the ledgers were communications.

11

PMK argues further that "the AOAO's Governing Documents clearly authorize the AOAO to file the Counterclaim, and there is no evidence that PMK lacked an appropriate authorization before taking action against the Plaintiff." *Dkt. 61, p. 23*. This is yet another straw man argument. The FDCPA is a strict liability statute. The AOAO's input or participation is wholly irrelevant.

### *4. Ms. Nolan's evidence is obviously sufficient.*

Undoubtedly aware that it cannot contest Ms. Nolan's facts and, thus, there are no genuine issues of disputed facts, PMK insinuates throughout its Response that Ms. Nolan's evidence is somehow insufficient to meet her initial burden of establishing the facts.

In support of this argument, PMK cites *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160–61 (1970). Yet, *Adickes* specifically suggests that Declarations be presented to prove the facts in support of Summary Judgment. *Id.* at 60 ("[t]o have avoided conceding this fact for purposes of summary judgment, petitioner would have had to come forward with either (1) the affidavit of someone who saw the policeman in the store or (2) an affidavit under Rule 56(f) explaining why at that time it was impractical to do so."). Yet Ms. Nolan's Declaration and Deposition testimony is *uncontested*. Thus, using PMK's own authority, Ms. Nolan's burden has been met and PMK has failed to meet its burden. *See also Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966–67 (9th Cir. 1981) (holding that depositions were

same as affidavits for purposes of summary judgment motion). PMK does not cite a single case (nor could it) that holds that a Plaintiff's Declaration is not sufficient evidence for the purposes of a Motion for Summary Judgment. PMK insinuates that Ms. Nolan is not credible but has failed to identify a single impeaching fact. Ms. Nolan's position simply devastates PMK's and, therefore, it must mean Ms. Nolan is a liar. Even if this were sufficient, credibility determinations are left to the jury. *Id*.

## II. CONCLUSION

From its briefing – including its Motion for Summary Judgment, *Dkt.* 47, and the instant Response, *Dkt.* 61, as well as its discovery tactics in this case, *see Dkt.* 52 – PMK's defense has become clear: obscure, evade, and attempt to shift both blame and burden from itself to Ms. Nolan. PMK does not have a single fact to contest Ms. Nolan's dispositive fact. PMK's invitation(s) to expand and ignore the law are baseless and would only serve the single policy consideration of assisting PMK in escaping liability to Ms. Nolan. Its brazen attempt at doing so should be flatly rejected. Ms. Nolan is entitled to summary judgment on each and every issue raised in her Motion.

DATED: Honolulu, Hawaii, October 18, 2024.

        *s/Richard L. Holcomb*
        Richard L. Holcomb (HI Bar No. 9177)

        Attorney for Plaintiff Maureen Nolan